## Connecticut Fire Insurance Company v. Union Mercantile Company.

## Insurance Company of North America v. Same.

(Decided December 18, 1914.)

### Appeals from Marshall Circuit Court.

1. Insurance—Verdict—Intendment After Verdict—Pleading.—Although the petition in an action on an insurance policy was defective because of its failure to allege that the goods destroyed had any value and what their value was, yet where the issue as to value was fully contested by the parties and passed upon by the commissioner, and considered by the court on exceptions, the doctrine of intendment after the verdict will be applied.

2. Insurance—Proofs of Loss—Avoidance of Policy.—False statements made under oath in proofs of loss must be intentionally made to avoid the policy; innocent mistakes or exaggerated estimates of value will not have that effect.

8. Insurance.—Concurrent insurance is such as insures, to any extent, the same interest insured by the original policy, against the same casualty, and covering the same or part of the same time, on such terms that, in event of loss, the insurers will bear the same proportionally, according to the terms of their policies. It is not essential that the latter policy shall insure the property to the same extent, and only to the same extent, as does the original policy. The fact that the first policy had a three-quarter value clause in it and the second policy did not, will not make the latter policy non-concurrent.

4. Insurance—Books—Evidence.—Where in a fire the book of the mercantile establishment showing its cash sales was destroyed, in ascertaining the amount of such sales in order to find how much property was destroyed, the bank deposits of the concern, together with the unpaid accounts and notes, afford the best basis of reaching the amount of sales.

5. Insurance—Issue as to Extent of Loss.—Upon the issue as to how much merchandise was destroyed, the commissioner, after ascertaining the amount of sales, wrongfully deducted therefrom the amount of the expenses of running the business; such expenses to the extent they were paid out of bank deposits should neither be added to nor taken from the amount of sales, but to the extent that they were paid out of money not deposited in bank, or out of merchandise, should have been added to rather than subtracted from the amount of sales.

6. Commissioners—Allowance—Fees.—Section 1740 of the Kentucky Statutes definitely and arbitrarily fixes the amount which a commissioner may be allowed for each day he is actually engaged in a case at $3.00; and Section 396 provides that even that allowance shall not be made until the commissioner had filed in court a written statement under oath showing the number of days he has so acted. These requirements are mandatory and must be followed.

FLEXNER & GORDON, FRANK M. DRAKE and OLIVER & OLIVER for appellants.

JOHN G. LOVETT and WHEELER & HUGHES for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing on each appeal.

These were originally two common law actions instituted by appellee on separate policies against the two appellants.

In August, 1911, while the policies were each in force, nearly all the property covered by them was destroyed by fire.

The policy of the Connecticut Fire Insurance Company was dated the 7th of February, 1911, and insured appellee's storehouse for $1,000 and its stock of goods

carried therein for $4,000 against loss by fire. The policy of the Insurance Company of North America was dated the first of June, 1911, and insured appellee's storehouse for $800, the fixtures therein for $200, and the stock of merchandise for $4,000 against such loss. The first named policy had the three-quarter clause in it as to the personal property, and the second named policy did not.

The cases were transferred to the equity docket in the lower court, consolidated and referred to a commissioner for the purpose of ascertaining the value of the property destroyed at the time of the fire.

The business of appellee was inaugurated and it began operations in August, 1907, at Gilbertsville, in Marshall County; for several months it was conducted as a partnership, but was in a short time incorporated under the corporate name now shown.

The commissioner in his final or supplemental report found the value of the storehouse to be $1,600 at the time of the fire, and the value of the goods destroyed to be $8,002.53. All exceptions to the report, as amended, were overruled and judgment entered against the two defendants under the terms of the policies.

The first question we are confronted with is one of pleading. The plaintiff in his petition set up the policy sued on, set forth the property embraced therein, and alleged same was destroyed by fire, but did not allege in terms that the property so destroyed was of any value whatsoever. Each of the defendants, however, in its answer alleged that at the time of the fire the value of the storehouse did not exceed $1,000 and the value of the stock did not exceed $2,409.95, which allegations were duly denied by reply, with an affirmative allegation therein of the value as claimed by the plaintiff.

It is urged for appellant that under this state of the pleading there should have been no judgment for the plaintiff in excess of $2,409.95, for the merchandise destroyed, the value admitted in the answer. Undoubtedly the petition was fatally defective in failing to allege that the goods destroyed as well as the house had some value, and what that value was, because if they had no value it suffered no loss, and there could consequently have been no recovery. But the issues as to the value of the goods destroyed and the value of the house were fully contested by the parties in the lower court and thoroughly tried out by that court and its commissioner; voluminous evidence was taken on these precise

issues, the books of the corporation were thoroughly overhauled and considered by the commissioner with the purpose of ascertaining the values, and exceptions to the commissioner's report were filed and tried out before the court. In other words, the question was determined by the lower court as to the value of the goods and the building destroyed just as fully as if the question had been accurately made in the pleadings. Under these circumstances it would be more than useless to send this cause back to have issues perfected which had already been so fully considered and tried out. It is, in fact, an ideal case for the application of the doctrine of. intendment after the verdict.

The rule laid down in Connecticut Fire Insurance Company v. Moore, 154 Ky., 18, in no sense conflicts with what we have said; on the contrary, the rule stated therein harmonizes with our view.

The rule stated therein was this:

"While we have been very liberal in applying the rule that a verdict will cure a defect in the pleadings, we have never gone to the extent of holding that where the petition fails to state a cause of action or some fact essential to the cause of action, and there is neither an admission nor proof of this fact, nor a submission of the question to the jury, such defect in the petition will be cured by the verdict."

In that case there was no evidence of value heard or permitted to be heard by the jury, there was no submission of the question of value to the jury and consequently the jury could not have passed upon that value; while in this case voluminous evidence was taken and heard, and both the commissioner and the court passed upon that evidence and fixed the value.

But it is asserted for appellants that the evidence as to the value taken by them was not for the purpose of fixing the values, but was taken only for the purpose of showing fraud upon the part of the officers of the corporation in its alleged exorbitant and fraudulent claims against the companies; but, whatever may have been the purpose in submitting this evidence, the record discloses beyond question that both the commissioner and the lower court considered it in fixing the value of the property destroyed.

There is a provision in each of the policies that:

"This entire policy shall be void if the insured has concealed or misrepresented in writing or otherwise any

material fact or circumstance concerning this insurance or the subject thereof; * * * or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject matter thereof, whether before or after the loss.''

It is insisted for appellant that the officers, directors, and owners of the assured corporation have been guilty of such fraud and false swearing in the proofs of loss submitted by them, and on their examination under oath, as will avoid the policies under the terms of the provision quoted. It is apparent from the proofs of loss and their examination under oath that these officers and directors gave exaggerated statements, especially as to the value of the house destroyed, and did make some mistakes as to merchandise alleged to have been bought and placed in stock; but throughout all of these statements they consistently adhered to the statement, in a general way, that the value of the merchandise destroyed was approximately $10,000. It appears that their statements of the value of the house was based upon an estimate of what it would cost to replace it, which might very well have been a mistaken basis; and it further appears, that while they made some mistakes in the details as to the amount of merchandise on hand at the time of the fire, that the report of the commissioner in this case, which was approved by the lower court, was not far below the general estimate placed by them on its value, not taking into account the ten per cent deduction for depreciation in value. We do not believe that the record shows such deliberate misstatements of facts and values as would justify an avoidance of the policies within the meaning of the provision quoted. The general rule on this subject is thus stated by this court in the case of Western Insurance Company v. Ray, 105 Ky., 523, in a quotation from Richards on Insurance:

''As a general rule, false swearing in a proof of loss, to vitiate the policy, must be intentionally false, whether by fraudulent over-valuation of the goods destroyed or a statement of items which really have no existence. An innocent mistake, or a mistaken, though exaggerated, estimate of value, is not sufficient to void the policy. An over-valuation, in order to work a forfeiture, must be so plain that it cannot be accounted for upon the principle that every man is naturally prone to put a favorable estimate on the value of his property.''

The commissioner found, in substance, that, while there was some exaggeration in the valuations, that there was no fraudulent purpose, and this finding was approved by the lower court and we see no reason to disturb it.

It was provided in the written application for insurance, signed by the appellee, that no other insurance would be permitted on the property covered by the policy of the Connecticut Company except by special endorsement on the policy, and that, when such other insurance is consented to by endorsement thereon, such endorsement should not be deemed a waiver of the three-quarters clause therein. There was endorsed on the policy of the Connecticut Company the words "other concurrent insurance permitted."

It is now argued for the Connecticut Insurance Company that inasmuch as its policy only insured the personal property embraced therein to the extent of three-fourths of the value that the policy subsequently issued by the Insurance Company of North America, which insured the same personal property up to the full value of such thereof as might be destroyed, was not concurrent insurance, and therefore the policy of the Connecticut Company is avoided.

The decision of this question involves the ascertainment of what is meant by "concurrent insurance." We confess that we have found no adjudication of the precise question here involved.

The case of Gough v. Davis, 52 N. Y. Supplement, 947, was where the validity of a policy, which expressly permitted other concurrent insurance, was called in question because the subsequent policy issued under this permit only covered a part, but not all, of the property embraced in the original policy. The court, in answer to the argument that this was not concurrent insurance, said:

"The object was to give the insured permission to have other insurance on the property during the existence of the policy. This would be concurrent insurance in respect of time and of the property. It would be concurrent in respect of time though for a shorter period than that of the policy, and in respect of the property though not upon all of it. It would not be wholly but only partly concurrent, and that, I think, is sufficient in order to be within the terms of the permission. It does not seem to me that the insured could be expected to understand that the word was used in the precise and

restricted sense that the additional policies must exactly concur in covering all of the property any more than all of the time.''

It would seem that if a partial concurrence as to the property embraced in the two policies and as to the time covered by them is sufficient, that certainly a partial concurrence as to the extent of the insurance in the two policies would also be sufficient.

The case of Caraher v. Royal Insurance Company, 93 Hun. (N. Y.) 82, was where the original policy was endorsed permitting other concurrent insurance, and further that the loss, if any, was payable to the mortgagee. A subsequent policy was issued embracing the same property, but without the endorsement making the loss payable to the mortgagee. The court, in response to the argument that this deprived the latter insurance of its quality as concurrent insurance, said:

''Besides, it is not made clear that other insurance would fail to be concurrent in form, because the loss, if any, in the one case, would be payable to the assured, and in the other the company had, by endorsement, assented to its payment to a mortgagee as his interest might appear. The subject of the insurance and the interest insured would be the same in each case. The insurance in all the cases would run together.''

Surely, if two policies of insurance embracing the same property be payable, in the event of loss, to different persons is concurrent insurance, then it cannot be said, with any degree of reason, that two policies embracing the same property, and payable, in the event of loss, to the same person, are not concurrent merely because the one policy insured the same property to a greater extent than the other.

In the case of East Texas Fire Insurance Company v. Blum, 76 Texas, 653, the word ''concurrent'' as used in an insurance policy permitting concurrent insurance was defined as follows:

''The word 'concurrent' means literally 'running together,' and in the connection here used has the sense of 'co-operating,' 'contributing to the same event' (Worcester); 'acting in conjunction, agreeing in the same act, contributing to the same event, co-operating, accompanying' (Webster.)

''In the absence of something in the context showing that the word was not used in its ordinary sense, it must be understood so to have been used, and nothing of that

kind is found. To be concurrent the insurance must operate at the same time, upon the same property, and look to the indemnity of the insured in case of its loss or destruction from casualty insured against.''

There is nothing in this seemingly accurate definition to suggest the idea that it is necessary for the two policies to have insured the property to the same extent and in the same way.

The case of Corkery v. Fire Insurance Company, 99 Iowa, 382, was where the later policy embraced not only the property covered by the original policy, which permitted concurrent insurance, but also embraced other and additional property. Upon the contention that this deprived it of its quality as concurrent insurance the court said:

'' 'Concurrent' is defined by Webster as 'acting in conjunction, agreeing in the same act, contributing to the same event or effect, co-operating, accompanying, conjoined, associate, concomitant, joint and equal, existing together and operating on the same objects.' Taking the provisions of this policy quoted above together, and it seems clear that it was not intended that the additional insurance authorized should not include other property. The provision as to contribution precludes such a conclusion. The term 'concurrent,' as used in this policy, was used in the sense of contributing to the same event or effect, but not jointly and equally.''

The case of New Jersey Rubber Company v. Commercial Union Insurance Company, 64 N. J. L., 580, was where a suit on an insurance policy, which permitted concurrent insurance, was defended upon the ground that the later policy did not embrace all the items and all the property in the original policy, and that it thereby lost its quality of concurrent insurance. The court in answer to this contention, and defining ''concurrent insurance,'' said:

''Concurrent insurance is that which to any extent insures the same interest against the same casualty, at the same time as the primary insurance, on such terms that the insurers would bear proportionally the loss happening within the provisions of both policies. It is this last quality—of sharing proportionally in the loss—that distinguishes concurrent insurance from mere double insurance.''

While the question presented in the last named case is not the same confronting us here, yet the language

used seems to be peculiarly applicable to the instant case. It will be observed that the opinion says, that if to any extent the two policies insure the same property against casualty, the insurers will bear the loss proportionally according to the terms of their policies. This language not only means that if one company issued a $10,000 policy and the other a $5,000 policy on the same property that they should pay the loss proportionally, but it also necessarily means that if one company issued a policy for $4,000 for the full value of the property, in the event of loss, up to that amount, and another company issued a $4,000 policy on the same property, but limiting its liability to three-fourths of the value of the property destroyed, that they likewise would share the loss proportionally within the terms of their policies.

It results from what we have said that the two policies in this case represented concurrent insurance.

It appears in this case that in the fire a part of appellee's books of account were destroyed, including the one showing its inventories and showing the amount of cash sales. The commissioner was therefore confronted with the duty, in ascertaining the stock on hand at the time of the fire, of looking to other and less satisfactory evidence of the property bought and placed in stock by appellee during the four years of its business, and what part thereof had been sold and disposed of. From a memorandum of the last inventory taken, which had been preserved, and duplicate bills from the wholesale houses with whom appellee dealt, he was enabled to ascertain, with a reasonable degree of accuracy, the quantity of goods purchased during that time. But the destruction of the book containing the cash sales left him the alternative, in ascertaining what those sales had been, either to base his finding upon the statements of the officers and manager of the corporation, made from memory, as to its sales during this long period, which must necessarily have been inaccurate and unsatisfactory; or to adopt the bank deposits, made in the name of the corporation, together with the unpaid accounts and bills receivable of the company, which were preserved, as a basis. While, from the nature of things, neither method would produce an accurate result, we think the latter method adopted by the commissioner was the safer one.

The commissioner, after deducting certain goods returned and other goods saved from the fire, finds that during the four years appellee was in business the cost

prices of its purchases of goods was $69,836.06; and he finds that the sales, after deducting the profits, amounted during the same period to $60,944.36, leaving a balance of $8,991.70, from which he takes ten per cent. for depreciation in value, leaving $8,002.53 as the value of the merchandise destroyed. We have gone carefully over the report of the commissioner and believe it to be substantially correct with the exception of two items.

After ascertaining the amount of the sale, by the method adopted, he deducted therefrom an item, designated as 'borrowed money,'' of $3,293.90, thereby necessarily reducing to that extent the amount of sales, and, of course, increasing to the same extent the merchandise supposed to be on hand at the time of the fire. Evidently the commissioner had in mind that this amount of money had been borrowed by somebody connected with appellee and deposited in bank to its credit, and that it did not therefore represent sales. But we have carefully and laboriously gone through this voluminous record with the view of finding some evidence upon which this deduction was made, and have been able to find nowhere in the record any reference to any such item except in the commissioner's report, and our investigation discloses no authority whatever for this action of the commissioner.

The commissioner further deducts from the amount of sales an item, designated "expenses," of $2,167.38. There is nothing in the record, so far as we can find, which shows the items going to make up this aggregate of expense. To the extent that this aggregate is made up of expenses either paid out of money not deposited in bank or paid out of merchandise, it should be added to rather than deducted from the amount of sales; but to the extent that it represents expenses paid out of money deposited in the bank it should neither be added to nor subtracted from the sales. That is to say, that the expense paid out of the cash drawer or paid in merchandise from the store represented additional sales and necessarily lessened the quantity of merchandise on hand; but to the extent it was paid out of money already deposited in bank, which had already been counted as part of the sales, it should neither be added nor deducted.

Ordinarily in equitable actions this court upon reversal directs the judgment to be entered, but, owing to the confusion and uncertainty growing out of the last named item of "expenses," and the failure of the report

to show in detail the items composing this expense or how it was paid, the court has not before it any basis upon which to direct a proper judgment; therefore upon the return of the case, as to these two items of expense and borrowed money, the case will be re-referred to the commissioner to make a report in accord with the facts.

The appellants complain of the allowance to the special commissioner of a fee of $400 in this case. The commissioner filed an unsworn statement showing that he had been, engaged in this case for fifty days, and upon that statement, and evidence heard in open court, the court allowed a fee of $400. Our statute (Sec. 1740) definitely and arbitrarily fixes the amount which may be allowed a commissioner for each day he is actually engaged in a case at $3.00; and Section 396 provides that no such allowance shall be made until he has filed in court a written statement, under oath, showing the number of days he has so acted. These sections have been held by this court to be mandatory, and under them the court has no right to make any allowance until the provisions of Section 396 have been complied with, and even then none to make it in excess of the amount prescribed in Sec. 1740. (Harding v. Harding, 132 Ky., 133.)

The judgment is reversed for the reasons given, and remanded for further proceedings as to the two items mentioned, and when they are correctly ascertained, to enter a judgment as herein indicated.