## Livingston County et al. v. Dunn et al.

(Decided June 14, 1932.)

H. F. GREEN, County Attorney, CHARLES FERGUSON, J. R. WELLS, and H. PATE WELLS, for appellants.

M. C. ANDERSON, C. H. WILSON, and CECIL C. WILSON, for appellees.

WM. MARSHALL BULLITT, LEO T. WOLFORD, JOSEPH POLIN, and ERNEST N. FULTON, amici curiae.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

At the regular election 1921, Burse B. Dunn was elected sheriff of Livingston county, for a four-year term, beginning January 1, 1922, and ending December 31, 1925. He qualified by executing bond and taking the oath of office, required by law. During his term of office, the county was without a county treasurer. As he collected the county taxes, he would pay, on the orders of the fiscal court, claims allowed by it, which he would report in his annual settlements made by him with a special commissioner of the county court. The subject matter in controversy on this appeal is his settlements for the years 1924 and 1925. Before the commencement of this action, the county board of education of Livingston county filed suit against Dunn to surcharge his final settlements of the common school funds for the years 1924 and 1925. During the preparation of that action, both Dunn and Livingston county concluded that errors had been made prejudicial to their respective rights.

Dunn filed this action to surcharge them, charging that either erroneously or fraudulently he had been improperly charged in both settlements with certain items and incorrectly refused credit by certain others. Livingston county and the members of the fiscal court were made defendants.

It may be stated here that no cause of action was stated against the members of the fiscal court and no relief was sought or granted as to them. Livingston county by answer traversed the petition, and by affirmative allegations sought to have the same settlements surcharged, and set out definite items which it claimed were improperly not charged against Dunn and others erroneously allowed to him as credits.

Dunn employed an accountant to audit and settle his accounts for the years 1924 and 1925. Livingston county employed two accountants to examine and report the accounts of Dunn with the county for the same years. Dunn's accountant reported the county was due him as follows:

| | |
|---|---:|
| General expense fund for the year 1924 | $1,396.80 |
| General expense fund for the year 1925 | 5,979.22 |
| Road and Bridge Fund for the year 1922 | 264.10 |
| Road and Bridge Fund for the year 1923 | 262.42 |
| Road and Bridge Fund for the year 1925 | 4,883.33 |
| Total amount due | $12,785.87 |

His report comprises 130 pages.

The accountants who were employed by the county undertook to ascertain the taxes with which Dunn was chargeable from the recapitulation sheet made up from the county tax commissioner's book and the certified report of the state tax commission. After their report was completed, it was delivered to one of the counsel of the county, but, by the time it was introduced as evidence herein, changes had been made in it, which the accountants were unable to explain, or to say whether their own report was authentic or correct.

The clerk of the county court was introduced as a witness for the county, "and he was handed while on the witness stand a statement" entitled "Taxable property, Livington County, for local purposes 1924," and a like statement for the year 1925, which he compared with the recapitulation of the taxable property for these years, and also with the certification of the taxable property of Livingston county by the state tax commission. His testimony was confined thereto.

Without attempting to analyse or determine the correctness of the report of the accountant employed by Dunn, or of those employed by the county, or the statement of the county clerk, it will suffice to say that neither of them present the total taxes with sufficient certitude to predicate a finding of the amount of taxes that should be charged to the sheriff, for either the year 1924 or 1925. The report of Dunn's accountant and of the accountants of the county were predicated on erroneous premises, and are conflicting and irreconcilable. The trial court chose to base his judgment on the report of the accountant of Dunn. By his report the assessed value of the lands and improvements, coal, oil, and gas, with intangibles and bank shares, and the raise respectively made by the state tax commission of the assessment thereof for the year 1924, was $4,140,105. This sum did not include two other items shown by the certificate of the state tax commission; namely, live stock and other tangible property.

The value of the live stock as certified by the state tax commission was      $523,737
Other tanglible property      677,961

Total      $1,201,698

In the $677,961 (other tangible property) was included manufacturing machinery, $58,687; agricultural products, $85,551; raw materials, $2,719.99; farm products, $15,742; total, $162,696. From the above $1,201,-698 was deducted $836,353. This $836,365, it is claimed, was given in the state tax commission's certificate of the taxable property for county taxation, after deducting household exemptions of $365,345. By the process employed by Dunn's accountant and the special master commissioner of the circuit court, the household exemptions of $365,345 were disregarded or not taken into consideration when determining the taxes with which the sheriff was chargeable.

The report of Dunn's accountant for the year 1924 is as follows:

| | | |
|---|---:|---:|
| Amount in State Certification | | $4,976,458 |
| Less following Deductions: | | |
| Intangibles | $480,768 | |
| Live Stock | 523,737 | |
| Manufacturing Machinery | 58,687 | |
| Agricultural Implements | 85,551 | |
| Raw materials | 2,719 | |
| Farm products | 15,742 | |
| Bank Shares (20c on $100) | 176,533 | |
| Exonerations | 9,585 | |
| Total | $1,353,322 | $1,353,322 |
| Property in State certification on which tax was collected by the sheriff | | $3,623,136 |
| Omitted property | | 28,549 |
| Franchises &c | | 288,523 |
| Total property on which tax collected | | $3,940,208 |
| $3,940,208 at 38c on $100 | | 14,972.79 |
| 176,533 Bank shares at 20c on $100 | | 353.07 |
| Total property tax collected | | $15,325.86 |
| Poll Tax Collected | | 3,366.00 |
| Total property & poll tax collected | | $18,691.86 |
| Rent from H. F. Green | | 28.50 |
| Refund Livingston County v. Dunn | | 16.00 |
| Total revenue charged to the sheriff | | $18,736.36 |

Credits

| | |
|---|---|
| 10% Commission on first $5,000.00 | $500.00 |
| 4% Commission on $13,691.86 | 547.67 |
| Vital Statistics | 153.00 |
| Election Claims | 704.16 |
| Vouchers filed and paid | 17,467.20 |
| Total | $19,372.03 |

$19,372.03
$18,736.36

$   635.67

It should be noted this method of ascertaining the taxes chargeable to the sheriff disregards the tax books which are required by section 4239a, Ky. Statutes, and the receipt therefor of the sheriff which this section requires him to execute and deliver to the county clerk.

The same method was used by the accountant of Dunn and the special master commissioner of the circuit court to determine the total taxes chargeable to Dunn for the year 1925. Certain road district taxes were collected by him, and the taxes chargeable against him for the road taxes were ascertained by the accountant of Dunn and the master commissioner of the circuit court on the same figures, obtained in the same way. The method used by the accountants of the county to determine the amount of the taxes with which Dunn was chargeable was substantially the one adopted by the accountant of Dunn and also the master commissioner; the essential difference between them being only the figures used respectively by them.

The statutes provide an elaborate and complete system for the assessing and equalizing the assessments of the property of the taxpayers, and for the providing the sheriff with books showing the assessment of each taxpayer, his taxable property and taxes, with separate bills, stubs, and receipts attached, showing the exemptions to which he is entitled. The tax books required to be made by the county clerk show accurately and exactly the total taxes the sheriff must collect of each taxpayer, and also account for to each taxing unit. The various sections of the statute dealing therewith were considered by this court in Bush v. Board of Education of Clark county, 238 Ky. 297, 37 S. W. (2d) 849, 853. It is unnecessary again to review here these sections.

Section 4128a-1, Kentucky Statutes, was quoted and discussed in the Bush case as it relates to other sections, as follows:

"When this has been done, the recapitulation mentioned in section 4114i-15, Ky. Stats., has been corrected to show the total amount of property subject to taxation, and it is grouped according to the tax rate and according to taxing jurisdictions, so that the amount with which the sheriff is chargeable is ascertainable in the same way that an individual tax bill is made out. Real estate totals so much, and the tax rate is so much. Livestock totals so much, and the tax rate is so much. The tax rate is applied for state purposes, county purposes, school purposes, and district purposes, as the case may be. When the recapitulation is finally corrected in the office of the county court clerk, it forms the basis for the determination of the amount for which the sheriff must account to each fund in each taxing jurisdiction.

"This is not the only record in the office of the county court clerk from which the amount with which the sheriff is charged is shown. Section 4239a, Ky. Stats., provides for the final record which shows the sum total with which the sheriff himself is required to admit by a certificate and receipt executed by him, that he is chargeable with the sums aggregated by the addition of all of the tax bills. This section requires the county clerk to deliver to the sheriff in book form consecutively numbered the tax bills arranged alphabetically and by cities and magisterial districts. This delivery of the tax receipts with the stubs to the sheriff must take place within thirty days after the auditor of public accounts has certified the equalized value of the property in the county subject to taxes for state purposes. The county clerk, when he delivers these tax books to the sheriff, must take from the sheriff a receipt showing, the number of tax bills, each additional line, and the total amount of taxes due the state, county, and the county school fund. This receipt must be signed and acknowledged by the sheriff before the county court clerk, and must be filed before the county court and recorded in the order book of that court in the same

way and manner as the official bond of the sheriff shall be recorded.

"This receipt executed by the sheriff is but the sum total of the taxes with which the sheriff shall be charged and the total of each fund with which he must be·charged. When the sheriff executes his receipt, he is bound to account for the amount of money which he admits is due to the respective funds, unless he should be able to show, by proper proof at the proper time in a court having jurisdiction, that there was some error in the amount set down in the receipt. The amount shown by the receipt will reflect the amount ascertainable by applying the proper tax rate to the property assessed for taxation as shown by the grand total of property subject to taxation in the county·which is the recapitulation of the totals of the respective taxing districts in the county. The recapitulation and the receipt executed by the sheriff will always be in accord, unless there is some error. The receipt executed by the sheriff at the time he receives the tax bills and stubs can be proven by the addition of the individual tax bills. When the county clerk receives the books of the county tax commissioner after having been approved by the county board of supervisors, he must make all necessary corrections, and he must make out the tax bills. He can readily determine the amount of taxes for which the sheriff must account by applying the tax rate to the total valuation of property subject to taxation in the separate jurisdictions and for the benefit of the separate funds. When he makes out the tax bills and stubs, he proves the correctness of his work by the addition of the amounts shown by the individual bills, and, if the amounts shown check with the amounts ascertained by him by his calculation based on the final recapitulation, he knows that his work is correct. When the sheriff comes to execute his receipt, he can almost immediately make the calculation based on the recapitulation, and in that way he will know at once whether the receipt which the clerk requires him to sign is correct. He can prove the correctness of the work of the clerk by adding the total of the individual tax bills.

"The Statutes provide an elaborate method of reducing all of the work done by the officers in con-

nection with making assessments to a point where it is definitely shown the exact sum that the different funds may expect from the sheriff when the collections are completed.

"When an action is instituted to charge the sheriff with a failure to pay over money to any fund, the first thing to be ascertained is the amount with which the sheriff was properly chargeable. That is shown by the records in the office of the county court clerk. These records are the recapitulation of the books of the county tax commissioner and the receipt executed by the sheriff to the county clerk and recorded in the office of the county clerk. These records must stand as correct, unless impeached by the one attacking their correctness. It may be shown that through fraud or mistake the recorded amount with which the sheriff is charged is inaccurate. Without pleading and proof showing that the amounts charged against the sheriff are inaccurate, they must stand as correct.

"When it comes to settle with the sheriff, there are certain additions with which he must be charged and certain subtractions which may be made. Omitted tax lists are filed with the county court clerk; franchise tax assessments and other assessments, made in a special manner, are also filed with the county clerk. In settling with the sheriff these separate charges are made against him, and the amounts are added to the amount shown to be due by the receipt which he executed to the county clerk. The subtractions may be on account of exonerations made by the county court as provided by the Statute, or by judgment of some court growing out of litigation over the amount of assessments, the delinquent list, and any other sum or sums that may be establishd by procedure before the proper court. The things enumerated are only illustrative of what may be added to the sums shown to be due by the receipt executed by the sheriff, or what may be deducted.

"When we examine the pleadings and evidence in the case before us, and measure them by the Statutes discussed above, the failure to make out a case according to the rules announced, is apparent. Neither in the pleadings nor in the evidence is there any reference to the recapitulation or the receipt executed by the sheriff as it should appear on record

in the office of the county court clerk. We do not know with what the sheriff was charged, or what amount he was expected to account for to the county board of education. It is true the statement by the interested auditors made up from the tax bills established a sum with which he should be charged, but the way to establish the correctness of that sum is by a comparison with the records in the office of the county court clerk.''

This excerpt from our former opinion on the subject now under review is conclusive in the present case, and its application requires a reversal.

It will be observed that it was stated in the Bush case that the tax books made by the county clerk and the sheriff's receipt to him were conclusive against both the sheriff and the county. He must account to and pay to the county the amount of taxes as shown by such books and his receipt to the county clerk. Neither the tax books as prepared by the clerk nor the sheriff's receipt showing the amount per tax books is a part of the record in this case. Neither of them were regarded by the accountant of Dunn, or the accountants of the county, nor the special master commissioner or the trial judge, in his consideration of this case. Without their presence, this court is unable to determine the amount of taxable property subject to county taxation, or the taxes, interest, and penalties including the franchise tax, the special rate on bank shares and other special assessments, with which the sheriff should be charged. One of the purposes of the statutes in providing this simple method of determining the taxes chargeable to the sheriff was to relieve the taxing units of the extraordinary cost of employing special accountants, which has been incurred in this case. If any errors were made by the county clerk in his preparation of the tax books when fixing the amount to be paid by a taxpayer or in deducting his exemptions, unless such errors are corrected by the tribunal clothed with authority to make such correction, within the time and in the manner and form provided by law, at the instance of the taxpayer or the sheriff, and the sheriff thereby exonerated, the sheriff is bound to account for and pay the county the amount of the taxes shown by the county clerk's tax books or his receipt therefor. Such correction may not be made in this action to surcharge his settlement. Ordinarily, we are warranted in indulging in a

presumption that the .county clerk performed his ministerial duties required by section 4239a, Ky. Statutes, and that he delivered to the sheriff the tax books and procured his receipt therefor, showing accurately the amount with which the sheriff was chargeable, but in this case his receipts for 1924 and 1925 fail to do so. Board of Education v. Caudill, 228 Ky. 652, 15 S. W. (2d) 452.

Other questions are presented for our consideration which we deem it our duty to consider and dispose of.

It is argued that section 170 of the Constitution of Kentucky exempts from taxation household goods and other personal property of a person with a family, not exceeding $250 in value, and that section 4019a-5 and section 4019a-10, Ky. Statutes, exempt from taxation for county and other local purposes (a) live stock and domestic fowls; (b) farm implements and farm machinery owned by a person actually engaged in farming and used in his farm operations; (c) machinery and products in course of manufacture, of persons, firms, or corporations actually engaged in manufacturing and other raw material actually on hand and at the plant for the purpose of manufacture; (d) unmanufactured agricultural products in hands of the producer; and (e) intangible property, and that it is therefore improper to deduct this $250 from the assessment of the property named in section 4019a-5 and section 4019a-10. The question of the household exemptions of $250 cannot be raised nor considered in this action, when determining the taxable property on which the county's taxes should be accounted for by the sheriff in his settlement therefor, for the simple reason the sheriff must account for the taxes shown by the clerk's tax books and his receipt therefor, whether they are right or wrong, unless exonerated as provided by law.

The complaint of a failure to allow the $250 exemption or the allowing of it out of other exempted property as we have already stated may be raised only by the taxpayer. It is too late to correct same in this action.

It is not required of us to consider the credits allowed to Dunn by the trial court, except two items which we deem it our duty to consider. Uhlen Ramage succeeded Dunn in the office of sheriff. After the expiration of Dunn's term, he executed and delivered to Ramage this instrument, namely:

"This is to certify that I, B. B. Dunn, ex-sheriff of Livingston County does owe the said county or

Uhlen Ramage, sheriff of said county the sum of $1175.25, due said road fund. Also the sum of $1150.00 due the road fund from the 1925 settlement which he was charged with in his 1926 settlement.

"[Signed]      B. B. Dunn."

This writing is without date. It is shown by the testimony of Mr. Ramage that the $1,150 mentioned in the writing was received by Dunn after the expiration of his term of office. All of the funds belonging to the county in his hands were turned over by Dunn to Ramage, except $1,175.25. Ramage, in the settlement subsequently made with the fiscal court, undertook to account to the county for the $1,175.25. Thereafter the county attempted to relieve him in his settlement of this $1,175.-25. It is not controverted by Dunn that the $1,175.25 were funds in his hands belonging to the county, and that it has not been paid to the county either by him or Ramage. Therefore, in his settlement in this action, he should be charged therewith, with interest.

It is satisfactorily shown that Dunn "had in his hands as special commissioner, funds donated" to the county and certain other funds collected by him as special commissioner, of which he turned over to the state highway commission $30,000 in pursuance to an order of the fiscal court. There is a dispute as to whether he has been credited with all of the $30,000, and, if he has not heretofore been given such credit, he is entitled thereto in his settlement as special commissioner. Dunn, as commissioner, should make a separate settlement as such, and not confuse his accounts as commissioner with those of sheriff.

Dunn contends that he was paid 1 per cent commission for collecting school taxes, and that he is entitled to charge the county for an additional 3 per cent and to have credit therefor in his settlement in this action. Section 4399a-8, Ky. Statutes, fixes the sheriff's commissions on collected school taxes at 1 per cent. We have considered the statutory commission of the sheriff for collecting school taxes in Ross v. County Board of Education, 196 Ky. 366, 244 S. W. 793; Owen County Board of Education v. Kemper, 197 Ky. 407, 247 S. W. 25; Fidelity & Deposit Co. v. Christian County Board of Education, 228 Ky. 362, 15 S. W. (2d) 287; Gibson v. Commonwealth, 238 Ky. 540, 38 S. W. (2d) 432; Bailey v. Magoffin County, 238 Ky. 805, 38 S. W. (2d) 923. In each

of these cases it was held that the sheriff's commission for collecting county school taxes was 1 per cent of the amount collected without the right to collect of the county an additional 3 per cent as now asserted by Dunn. This construction of the statute may be considered now as final until it is altered or changed by an act of the General Assembly.

It is conceded that section 4399a-8, Ky. Statutes, is section 8 of an act entitled:

"An Act creating a county board of education, prescribing its duties, fixing the tenure of office and compensation of its members; providing for the election of county superintendent by said board; fixing his qualification, compensation and term of office and prescribing his duties and fixing his bond; providing for the election of an attendance officer by the county board of education; providing for a levy of tax for common school purposes in each county; prescribing the duties of the county tax commissioner, the county court clerk, with reference to the assessment of the property subject to said tax and prescribing the duties of the county board of education and the fiscal court levying said tax and prescribing the duties of the sheriff in collecting said taxes and making his settlement to the fiscal court; providing the manner of paying his commission for collecting same; prescribing the duties of the fiscal court with reference to making settlement with the sheriff for said tax; providing for employment of teachers; providing for the employment of district trustees and prescribing their duties."

It is admitted that the act originated in the Senate. It is contended that the act is revenue-raising legislation, and, having originated in the Senate, therefore, it is forbidden by section 47 of the Constitution. A mere reading of the title of the act shows the falacy of this contention. The Constitution of the United States (article 1, sec. 7, cl. 1) and the Constitutions of many of the states contain a provision similar to section 47 of our Constitution. It is a fixed rule of construction of such a provision that a revenue bill within the meaning thereof must originate in the House of Representatives and not in the Senate, and that such a bill must be a revenue measure in the strictest sense of the word, and not

merely incidently such. To sustain the statement that the act of which section 4399a-8 is a part is not a revenue raising act no more should be required than a reference to the title of the act and to the rule of construction stated in Story on the Constitution, sec. 880; Cooley's Constitutional Limitations (8th Ed.), pp. 267, 268; Lang v. Com., 190 Ky. 29, 226 S. W. 379, and cases there cited; Twin City National Bank v. Nebecker, 167 U. S. 196, 17 S. Ct. 766, 42 L. Ed. 134; Millard v. Roberts, 202 U. S. 429, 26 S. Ct. 674, 50 L. Ed. 1090.

The special master commissioner is a party to this appeal, and the allowance to him of $250 for his services is attacked on the ground that more than $3 per day was allowed him, and that his claim was not supported by an affidavit. Section 1740, Ky. Statutes, fixed his fee at $3 per day for the time he was actually engaged. The court had no discretion in fixing the allowance of the commissioner, and should not have allowed him more than the amount fixed by this section. Rash v. Givens, 155 Ky. 507, 159 S. W. 958; Graham v. Alliston, 180 Ky. 687, 203 S. W. 563. The statute is mandatory. Harding's Admr. v. Harding, 132 Ky. 133, 116 S. W. 305. However, it does not prevent the court from allowing for extraordinary services or actual expenses incurred by the commissioner in the performance of his duties. Fidelity National Bank Receiver v. Youtsey, 81 S. W. 263, 26 Ky. Law Rep. 340; Spears v. Thomas, 70 S. W. 1060, 24 Ky. Law Rep. 1154.

In every case the application for an allowance of such fees, or per diem, the commissioner must accompany it by a verification or the affidavit required by section 396, Ky. Statutes, or the order is void. Fidelity Oil Corporation v. Southern Oil & Pipe Line Co., 197 Ky. 676, 247 S. W. 950; Connecticut Fire Ins. Co. v. Union Mercantile Co., 161 Ky. 718, 171 S. W. 407.

Neither section 1740 nor section 396 was complied with by the commissioner, and for this reason the judgment as to him is also reversed. The parties may be allowed to amend their pleadings, if they desire.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.