## Livingston County v. Dunn et al.

April 20, 1945.

As Extended on Rehearing June 22, 1945.

368

Charles Ferguson and H. F. Green for appellant.

Milton C. Anderson and Leo T. Wolford for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming in part, reversing in part.

Burse B. Dunn was the sheriff of Livingston County from 1922 to 1925, inclusive. The County had no treasurer and the sheriff paid claims out of funds in his hand. For some of them he was currently issued warrants, or what· are called "deficits", in reimbursement; others were paid out on orders of the fiscal court. As a special agent or treasurer he received money donated for road construction. When final settlement was undertaken for the years 1924 and 1925 there was "confusion worse confounded" in the accounts.

On the first trial in the circuit court a special commissioner (Judge H. F. S. Bailey) reported that the county owed Dunn $8,678.04, but the court (Judge Ruby Laffoon) found the sum to be $13,191.63 with interest from November 22, 1929. We reversed that judgment and pointed out that the accountants for each party and the court had based their computations upon erroneous bases and lined out the statutes and the proper method of accounting. Certain claims for credits and charges were disposed of and the case remanded for consistent proceedings. Livingston County v. Dunn, 244 Ky. 460, 51 S. W. 2d 450.

On a second trial judgment was rendered (by Judge Joe L. Price) against the county for $621.27, with interest from February 17, 1925. This was reversed because there had been no reference to a commissioner and to have decided the case here would have been for this court to have made such an accounting de novo. The judgment was reversed with directions that the case be again referred to a commissioner to make the accounting and a report. Livingston County v. Dunn, 263 Ky. 366, 92 S. W. 2d 348.

On the third trial a special commissioner (Judge W. L. Prince) reported that Dunn owed the county $22,-080.02 plus interest from January 4, 1926, to date of his report, $15,748.09, a total of $37,558.00, but a judgment was rendered (Judge Joe L. Price) in favor of the coun-

ty for only $654.71, with interest from January 4, 1926. Livingston County brings this appeal from that third judgment, insisting that it is too little. Dunn and the sureties on his bond have prosecuted cross appeals, contending that Dunn should recover judgment against the county for $7,627.69,

We have presented to us as the final arbiter and accountant a very large and complex record from which not only private accountants but two special commissioners and the special judges have submitted findings ranging from the extremes of $13,191.64 in favor of the ex-sheriff to $37,558.11 against him, a difference of over $50,000. Furthermore, three different dates have been fixed from which interest should be computed.

1. On account of the 1924 General Fund, the judgment is that the sheriff owes the county $1,259.95. The county claims he owes $1,630.08. The county has used the proverbial "fine tooth comb" in going over this and all the various voluminous figures involved in the record. It points out numerous errors ranging from its insistence of a one cent error in the total chargeable, to $305.39 in the credits. Most of the items, especially this largest one, are based upon the claim that the credit should not be allowed the sheriff because of the failure of a specific pleading or specific reference in the exceptions to the commissioner's report, or as being more than claimed therein. In such a large matter of accounting as this, we do not think it is required of a pleader that every item should be meticulously described. It seems to us that the pleadings and exceptions in this record are sufficiently definite to have justified the consideration of the items and the rendering of judgment on them. The county claims that the court should not have allowed an additional credit of $71.14 which had been disallowed by the commissioner for taxes which had been exonerated by the fiscal court. It is argued that on the first appeal we held that the sheriff must account for the total sums of the tax books and his receipt therefor "whether they are right or wrong", and that is the law of the case; also that it had been stipulated that such aggregate should constitute the total charge. Counsel overlook the added clause in our opinion that the tax books should be regarded whether right or wrong "unless exonerated as provided by law." Throughout the opinion it is recognized that errors may have been made in the tax bills

and books and that their correction must be taken into consideration in arriving at the net sum charged the sheriff or, as the case might be, the amount of credits he is entitled to receive in the final accounting. The stipulation of the parties must be read in the light of the opinion, and that permitted the allowance of credit to the sheriff for sums he did not collect because of the exoneration of the taxes by the fiscal court.

On the other side, the surety on the sheriff's bond contends that the judgment on this item against it should be reduced by $817.15, making the net $409.34, although it be held its co-appellee, Dunn, be liable for the entire amount. It is developed that in the original settlement made by the sheriff with the county he reported that he had paid out $817.15 more than he had collected. He was given credit for this sum and the amount had been refunded to him. This proved to have been an error. But for this payment to the sheriff by mistake and the necessity of charging the sum back to him in the final settlement of his accounts, there would not have been any judgment against him. On the contrary the county would be owing him, for the judgment in the whole case only $654.71. We, of course, recognize the rule of law was that where an officer has received money in his private capacity or wrongfully, the surety on his official bond is not responsible for any act in relation thereto which renders him liable to anyone. This is because it is not a condition of the bond. See Clark v. Logan County, 138 Ky. 676, 128 S. W. 1079; Elliott v. Commonwealth, 144 Ky. 335, 138 S. W. 300; Equitable Surety Co. v. City of Newport, 194 Ky. 363, 238 S. W. 1046; Wolfe County v. Smith, 283 Ky. 483, 141 S. W. 2d 874. But we do not think the rule applicable. This item of overpayment arose out of his official act. His erroneous representation or presentation of account as sheriff was the cause of the payment to him. It was part of his official duty to render a correct accounting. Moreover, this accounting for the General Fund taxes in 1924 was but a part of the whole accounting for all taxes, irrespective of any particular allocation of the sums to different accounts or funds. Thus it was found upon a re-audit or final settlement that Dunn owed the county $722.04 for the two road funds for the same year, 1924.

2. In 1924, the county had what is called a "Magisterial District Road Fund." It appears to have been the

allocation of 12 cents of the regular 50-cent tax levy to the several magisterial districts. The judgment confirmed the commissioner's report showing the sheriff owed the county $344.32 on this account. The county claims the amount should be $438.70. It finds errors of 2 cents, 10 cents, $1.30, etc. The principal item is based upon the insufficiency of the sheriff's pleadings, which we have disposed of above, and the others are either too trivial to bother with or are found not to constitute errors.

On the other side, the sheriff and his surety claim the amount owing is $23.40 less than the court adjudged on account of the tax exonerations which the court had recognized in the settlement of the 1924 general fund. The court disallowed the credit here because it was not shown that the property embraced in the exonerations was located in the magisterial districts entitled to this fund. As we understand, this proportion of the tax levy was collected from all the property in the county and the appropriation or allocation was made to particular magisterial districts. This fact, it seems to us, can make no difference in a matter of allowing the sheriff credit for the exonerations. We think, therefore, that this item should be allowed the sheriff and his surety.

3. The court adjudged the sheriff owed the county $377.72 on his accounts covering the twenty cent Road Tax Fund for 1924. This is $37.44 less than the commissioner had reported, due to the allowance by the court of credit for the exonerations. The county insists the judgment should be $836.58. The same contentions are made here with respect to the pleadings and the law of the case which we have held above not to be sustainable. In addition the county claims the sheriff is entitled only to one per cent commissions instead of four per cent allowed by the court, making a difference of $264.46. This is based upon the absence of specific pleading and the failure of the sheriff to testify that he was entitled to the increased sum. This item does not relate to the 1924 or 1925 collections, to which all the others relate, but to collections in the years of 1922 and 1923. It appears that this twenty cent special tax was levied during the four years under authority of two popular elections. During 1922 and 1923 it was an annual tax levy on the pay-as-you-go-plan, while during 1924 and 1925 it was to create a sinking fund for a bond issue. See Smith v.

Livingston County, 195 Ky. 382, 242 S. W. 612. The commissions allowable for collecting this tax during 1922 and 1923 were only one per cent, while that allowable for 1924 and 1925, when it went into the sinking fund, was four per cent. Caldwell County v. Farmer, 231 Ky. 200, 21 S. W. 2d 244. See also Gillis v. Anderson, 256 Ky. 472, 76 S. W. 2d 279. The judgment erroneously allowed 4 per cent commissions for each of the four years. The excess for 1922 is $264.10 and for 1923 is $254.20. The judgment against the sheriff should, therefore, be increased by $518.30 on this account.

4. In the settlement for the General Fund of 1925, the commissioner and the court found the sheriff owed the county $928.92. The county contends the amount is $5,736.12. Ignoring several contentions of errors of trivial sums and arguments based upon the grounds disallowed above, the difference arises out of the general claims against the county paid by the sheriff. The parties agree that the total of these claims is $29,420.56. The judgment reduces this credit by $14,082.69, for which warrants were issued to Dunn and assigned by him to certain banks, or to the banks in renewal on February 17, 1926, after Dunn's term of office had expired. The county contends the correct sum for which warrants should have been issued was $7,417.60, resulting in overpayment or credit originally of $6,665.04. The sheriff contends that on this item the county owes him a balance of $6,153.67.

It appears that in the beginning of the year the floating debt of the county was $21,450.80, including $817.50, supposed to be due the sheriff in the settlement of his 1924 account. When the year ended, the sheriff took credit for $29,430.56 (which included the $21,450.80) as having been paid by him. Yet, as we understand this involved procedure or, at least, involved record and method of accounting, he had not paid that much money out but perhaps had overdrawn his sheriff's accounts in the banks for a part of it. At any rate, he was allowed a credit in his original settlement for $14,082.69, the same as if he had paid out that much money above his collections, and for this the county issued the warrants described. Those warrants were paid by Dunn's successor in office out of taxes collected by him. That is when the county's money was actually disbursed. The result is that Dunn should have been and was credited

on this item in the final judicial settlement with $29,-430.56, less $14,082.69, or a net credit of $15,347.87. This calculation was arrived at by both the commissioner and the court. The county points to Dunn's pleading that he was entitled to a credit of only $4,852.30 instead of $14,-082.69. The county says this sum only should be allowed in any event, but its calculations on the same basis are that the sum should be $5,736.12. This indicates something of the confusion in the record.

On the other side, the sheriff contends that instead of $14,082.69 there should be deducted from the $29,-430.56 only $7,000 (representing warrants to the Citizens Bank, $5,000, and Farmers Bank, $2,000), so that his credit should be $22,430.56 instead of $15,347.87, a difference of $7,082.69; hence that instead of a judgment against him for $928.92 he is entitled to a judgment against the county for $6,153.77.

In this record of 12 or more volumes, containing many statements of account, pleadings and corrections, figures may be found that would seem to support both the county's contentions and the sheriff's contentions of error in the judgment on this item. We have gone through all these figures at length and are not convinced that the Commissioner and the Judge were wrong in their conclusions. Being a matter of fact under such circumstances, we accept the finding.

5. The commissioner and the court found the sheriff owed the county $565.80 on account of the Magisterial District Road Fund for 1925. The several parts of this item are discussed at length in the county's brief, but in the end it seems to arrive at the same conclusion as to the balance found to be owing by the judgment. The sheriff concedes this item should be increased by $65.96 so as to make a judgment against him $631.74. This error arose in carrying forward the balance due on the 1924 account as $1165.84 instead of $1231.78.

6. In the settlement for the twenty cent tax for roads in 1925, the sheriff was charged by the commissioner with collecting $29,956.89 and credited by $345.51 for his commissions and certain exonerations. The net, $29,610.38, is charged to him as "Sinking Fund Settlement." He is credited by payments to a bank of $5,-012.50, and payment to his successor in office of $8,066.60.

Thus, the sheriff stood charged with $16,531.28 on this account. For a balance carried forward from another account covering the proceeds of bonds, the sheriff was charged with $20,584.97. Against this he was credited with $18,621.52 for payments made for road construction under orders of the fiscal court, leaving a net charge of $1,963.45. The total of these two items is $18,494.73. Combining the two accounts, the sheriff is charged with $50,541.86 and credited with $32,047.13, a net balance of $18,494.73 against him as reported by the commissioner.

There is particularly involved in this combined item the allowance of a credit for money paid to the State Highway Commission, under an order of the fiscal court of April 13, 1925. The amount so paid was $30,000. Dunn, the sheriff, as we have stated, had acted as a special agent or treasurer of collections of private subscriptions to a fund raised to match or to induce an appropriation by the Highway Commission to complete a main highway through the county. In our first opinion in this case, we observed that his accounts as such an agent or treasurer should be considered separate from his accounts as sheriff. For this reason the commissioner did not feel authorized to credit the sheriff with any of the money which he understood came from that fund. However, it had been developed in the case that the sheriff had transferred $20,798.44 tax collections to his account as special treasurer in the Salem bank in order to have $30,000 paid by him to the State Highway Commission. So that actually only $9,201.56 came from the private contributions. The court sustained the sheriff's exceptions to this part of the commissioner's report and held the sheriff to be entitled to a credit for $20,798.44, with the result that the county owed the sheriff a net sum of $2,303.70 on this combined item.

The county is claiming that the total charges against the sheriff should be $58,608.45 instead of $50,541.86, found to be correct by the commissioner and the court. We cannot follow the appellant's argument that there should be charged up $8,066.60 against the sinking fund for money in three banks. This sum appears to have been paid over by Dunn to his successor and to have been already considered in reaching the sum charged in Dunn's account by the commissioner and the court. Here, it may be noted, is the $1,175.25 item pointed out in our first opinion as not having been paid over by Dunn to his

successor. Had it been so paid, this credit would be $9,251.85 instead of $8,066.60. Although the $30,000 was paid out as special agent or treasurer, $20,798.44 had been transferred from Dunn's account as sheriff to himself as special treasurer. This is not in conflict with our observation in the first opinion as to the separation of accounts, for it merely takes into consideration the sheriff's payment from his tax collections, as was authorized by the fiscal court. The best we can understand the record, it supports the finding of the commissioner and the court as to the source of the payment and, therefore, we must let that finding stand.

Therefore, the judgment against the sheriff should be increased by $518.30 on account of the error in allowance of commissions for collecting the Special 20 cent Road Tax, as above described. It should be increased by $65.96, conceded to be due on account of Magisterial District Road Fund for 1925. On the other side, the sheriff is entitled to have the judgment reduced by $23.40 on account of the exonerations from taxation under the Magisterial District Road Fund for 1924. The net result is that the County was entitled to judgment against the Sheriff and the sureties on his bond in the sum of $1,215.57 instead of $654.71.

The parties cannot agree upon the date from which interest should be computed. Since the judgment appealed from was the first in the series to find that Dunn owed the County anything upon the balancing of the confusing claims and counterclaims, we think the day it was rendered is the proper one from which interest is to be allowed. The fact that we have increased the amount found to be owing, obviously does not alter the fact that Dunn was then adjudged to owe the County in a settlement of his accounts as Sheriff. Cf. Stephens v. Stephens, 300 Ky. 769, 190 S. W. 2d 327. The judgment is reversed on the original appeal and affirmed on the cross-appeal.