Allen, J.
 

 Under Section 6346-1, General Code (107 Ohio Laws, 509), Edward T. Dunn, plaintiff in error here, was convicted of being engaged in the business of the purchase of and making loans on salaries of wage earners in Cleveland, without first having obtained a license so to do from the commissioner of securities under the chattel and salary loans act.
 

 Section 6346-1 reads as follows: “It shall be unlawful for any person, firm, partnership, association or corporation, to engage, or continue, in the business of making loans, on plain, endorsed, or guaranteed notes, or due-bills, or otherwise, or upon
 
 *433
 
 the mortgage or pledge of chattels or personal property of any kind, or of purchasing or making loans on salaries or wage earnings, or of furnishing guarantee or security in connection with any loan or purchase, as aforesaid, at a charge or rate of interest in excess of eight percentum per annum, including all charges, without first having obtained a license so to do from the commissioner of securities and otherwise complying with the provisions of this chapter.”
 

 With this section must be read Section 6346-11, General Code (113 Ohio Laws, 44), which reads as follows: “The payment of three hundred dollars ($300.00) or less in money, credit, goods or things in action as a consideration for any sale, assignment or order for the payment of wages, salary, commissions or other compensation for services, whether earned or to be earned, shall be deemed a loan on salary or wage earnings within the provisions of this act; and the amount by which such assigned compensation exceeds such payment shall be deemed interest upon such loan from the date of such payment to the date such compensation is payable. Such loan and such assignment shall be governed by and subject to the provisions of this act.” .
 

 The plaintiff in error claims that Section 6346-11 violates the Fourteenth Amendment to the Constitution of the United States, “No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws,” and Section 1 of Article I of the
 
 *434
 
 Constitution of Ohio, which reads as follows: “All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety.”
 

 The municipal police court of the city of East Cleveland made a finding of facts, which reads as follows:
 

 “The court finds:
 

 “That E. T. Dunn is and at all times herein concerned was the agent and employee of J. D. McWilliams of Cleveland, Ohio, and during all of said time said E. T. Dunn and J. D. McWilliams were and are engaged in the business of the purchase of and making loans on salaries and wage earnings in Cleveland, Ohio.
 

 “That H. S. Kincaid is and was during all times herein concerned the employee of The Pennsylvania Railroad Company as weightmaster and as said employee had earned and there was due him, from The Pennsylvania Railroad Company the sum of $27.50 as wages for the month of July, 1929, growing out of said employment.
 

 “That on or about July 8, 1929, E. T. Dunn at Cleveland, Ohio, paid the sum of $25.00 in money as consideration for the sale to him of the wages of H. S. Kincaid in the sum of $27.50 earned as aforesaid.
 

 “Said sale is evidenced by the written application for and assignment of wages executed by said H. S. Kincaid to E. T. Dunn and incorporated among the papers of this'cause and known as ‘Exhibit A.’
 

 “That by virtue of said assignment H. S. Kincaid
 
 *435
 
 became divested of all right to or interest in said wages and E. T. Dunn became the sole owner thereof for the period designated.
 

 ‘ ‘ That neither on said date nor at any other time had E. T. Dunn nor J. D. McWilliams obtained a license from the Commissioner of Securities of the state of Ohio nor paid any license fee to the latter nor done any other thing required by the Chattel and Salary Loans Act of Ohio, General Code, Sections 6346-1 to 6346-12, inclusive, and that E. T. Dunn purchased said wages at a charge or rate of interest in excess of eight percentum per annum, including all charges.”
 

 Hence the plaintiff in error not only made a single purchase of wages, salaries, commissions, or other compensation for service upon the date of July 8, 1929, but also was found to be engaged in the business of such purchase. The charge for the service is conceded to be at the rate of 10 per cent, for each half month.
 

 The plaintiff in error claims that Section 6346-11 is a legislative encroachment upon judicial powers because it prescribes a conclusive rule of evidence. However, we do not so read the statute. It defines an offense growing out of engaging in the business of the purchase of salaries and wages without a license. In this statute the Legislature simply provides that such a transaction under certain circumstances shall be treated as a loan. It classifies purchases with loans in order to regulate them under the statute. This is far from establishing a conclusive rule of evidence. If the business of purchasing salaries and wages is affected with a public interest it is clearly within the police power of the
 
 *436
 
 Legislature to provide that such business cannot be engaged in without a license in conformance to the statute. Hence this objection is overruled.
 

 Plaintiff in error also urges that the business of purchasing salaries and wages is not affected with the public interest, and cites the case of
 
 Tyson & Bro. United Theatre Ticket Offices
 
 v.
 
 Banton, 273
 
 U. S., 418, 47 S. Ct., 426, 71 L. Ed., 718, 58 A. L. R. 1236, as conclusive upon this point. In this case the Supreme Court of the United States held that the business of theater ticket selling was not so affected with a public interest as to permit of regulation. However, there is a marked distinction between the business of theater ticket selling, a business dealing mainly with recreation, and the business of the purchase of salaries. The charge of interest at exorbitant rates to needy workers who because of immediate exigencies have to secure small loans, not only because of the extent of the evil, but also because of the nature of the transaction, is clearly affected with the public interest. Prom early days the charge of usury has been the subject of public regulation, upon the express ground that the public interest requires such regulation. The purchase of salaries at such a rate of discount as 10 per cent, per half month period is clearly tantamount to an excessive rate of usury, and hence lies within the scope of the police power.
 

 Plaintiff in error also claims that this enactment deprives the wage-earner, of his constitutional freedom of contract. However, in this state the Legislature in various phases of the small loan law has regulated the business of making loans on salaries
 
 *437
 
 and wage earnings, and this legislative action in the exercise of the police power has repeatedly been held constitutional.
 
 Wessell
 
 v.
 
 Timberlake,
 
 95 Ohio St., 21, 116 N. E., 43, Ann. Cas., 1918B, 402;
 
 Sanning
 
 v.
 
 City of Cincinnati,
 
 81 Ohio St., 142, 90 N. E., 125, 25
 
 L.
 
 R. A. (N. S.), 686;
 
 Globe Security & Loan Co.
 
 v.
 
 Carrel,
 
 106 Ohio St., 43, 138 N. E., 364.
 

 Hence it has already been held in this state that such an enactment does not deprive the wage-earner of his constitutional freedom of contract.
 

 In
 
 State
 
 v.
 
 Mehaffey,
 
 112 Ohio St., 330, 147 N. E., 506, this court again recognized the validity of such enactments!, but decided that the Ohio statute did not cover outright purchases of salaries and wages. The court said upon page 336 of 112 Ohio State, 147 N. E., 506, 508: “If the practices of the defendant and others similarly engaged require the supervision of the commissioner of securities, that is a subject for the consideration of the legislative branch of this state, and not for the courts.”
 

 Thereafter Section 6346-11 was enacted, providing that such sales should “be deemed a loan on salary or wage earnings within the provisions of this act.”
 

 In a number of states the courts have upheld statutes enacted with the purpose of protecting needy borrowers from the extortion of the purchasers of salaries, holding that such statutes deal with a subject affected with a public interest, and that they do not violate the constitutional provisions with reference to the right of contract. The cases of
 
 Tollison
 
 v.
 
 George,
 
 153 Ga., 612, 112 S. E., 896, and
 
 Spicer
 
 v.
 
 King Bros. & Co.,
 
 136 Tenn., 408, 189 S. W., 865, held similar laws unconstitutional. However,
 
 *438
 
 these states have no statutes providing, as does our own, that the sale of salary or wages shall be deemed a loan. Such relief has been held to be constitutional, as granted in statutory enactment, in Maryland, Indiana, New York and Texas, in the following decisions:
 
 Wight
 
 v.
 
 Baltimore & Ohio Rd. Co.,
 
 146 Md., 66, 125 A., 881, 37 A. L. R., 864;
 
 Tennessee Finance Co.
 
 v.
 
 Thompson
 
 (C. C. A.), 278 F. 597;
 
 Brandt
 
 v.
 
 Hall,
 
 40 Ind. App., 651, 82 N. E., 929;
 
 Willson
 
 v.
 
 Fisher,
 
 75 Misc. Rep., 382, 135 N. Y. S., 532;
 
 Cotton
 
 v.
 
 Cooper
 
 (Tex. Civ. App.), 160 S. W., 597;
 
 State, ex rel. Ormes,
 
 v.
 
 Tennessee Finance Co.,
 
 152 Tenn., 40, 269 S.
 
 W.,
 
 3.
 

 Recent decisions of courts of last resort holding similar measures constitutional come from Maryland, Virginia, and Louisiana. In the case of
 
 Palmore
 
 v.
 
 Baltimore & Ohio Rd. Co.,
 
 156 Md., 4, 142 A., 495, the Supreme Court of Maryland construed a section of the small loan law of that state substantially the same as Section 6346-11, and upheld the statute. In the case of
 
 Sweat
 
 v.
 
 Commonwealth,
 
 152 Va., 1041, 148 S. E., 774, the court construing a similar section stated that the Legislature of Virginia in the exercise of its police power, and in an effort to correct a condition reasonably calculated injuriously to affect the general welfare, had the authority and the right to limit and regulate the power to contract as in the statute set forth. A similar decision was made in the case of
 
 State
 
 v.
 
 Hill,
 
 168 La., 761, 123 So., 317, 319. In the opinion the court said:
 
 “We
 
 can perceive of no legal reason why transactions relating to purchasing and discounting wages and salaries should not be included in an act regulating the business of
 
 *439
 
 loaning money, especially when such sales of salaries and wages are made in connection with the business attempted to be regulated by the statute under attack.”
 

 We conclude that the Legislature enacted Section 6346-11 with the specific purpose of adopting the suggestion of this court in
 
 State v. Mehaffey, supra,
 
 that the business attempted to be regulated is affected with the public interest, and that the right of the plaintiif in error to contract is not infringed by the enactment.
 

 The judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Kinkade, Robinson, Jones, Matthias and Day, JJ., concur.