## Ravitz v. Steurele, Justice of the Peace.
## Lissauer v. Dorman.

(Decided Dec. 21, 1934.)

WILLIAM F. CLARKE, Jr., and EMMET R. FIELD for appellants.

BAILEY P. WOOTTON, Attorney General, ARTHUR B. BENSINGER and JOHN S. MILLIKEN for appellee J. R. Dorman, Banking Commissioner.

STITES & STITES and NORRIS McPHERSON for appellee Kentucky Discount Co.

STOLL, MUIR, TOWNSEND & PARK, EUGENE R. ATTKISSON, EDWARD C. O'REAR, JOHN R. ALLEN and FRED R. WRIGHT amici curiæ.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

These appeals present identical questions, and will therefore be disposed of as one.

In the first entitled action a motion to dismiss, because the questions involved in it are moot, is overruled.

The paramount question to be determined is the constitutional validity of an Act of 1934, c. 17, p. 32, entitled:

"An Act to define, license, and regulate the business of making loans or advancements in the amount or of the value of three hundred dollars [$300] or less, secured or unsecured, at a greater rate of interest, consideration, or charge than six per centum [6%] per annum, prescribing the rates of interest and charges therefor and penalties for the violation thereof, regulating the assignment of wages or salaries, earned or to be earned, when given as security for any such loan or as consideration for a payment of three hundred dollars [$300] or less, providing for the administration of this Act, authorizing the making of examinations and investigations and the publication of reports thereof, providing for a review of decisions and findings of the Banking Commissioner under this Act, and repealing so much of section 4224a-1, Carroll's Kentucky Statutes [1930] as applies to persons licensed under this Act, and limiting the application of Sections 2218 and 2219, Carroll's Kentucky Statutes [1930], and repealing all Acts and parts of Acts whether general, special, or local, which relate to the same subject matter as this Act."

Section 1 thereof defines terms used therein. Section 2 provides no person, except as authorized by the act and without first obtaining a license from the banking commissioner as provided in the act, shall engage in this state in making loans in the amount of value of $300 or less at a greater rate of interest or consideration therefor than 6 per cent. per annum. Section 3 defines the manner of making application for license thereunder and what it shall contain; also, stating the net worth of the applicant to be at least $20,000, etc., and requires the applicant to pay the banking commissioner a license fee of $50 to cover his expense of investigating the applicant and an additional annual license fee of $250 proportioned to the year the application is made. This section imperatively requires, as therein set forth, the licensee to file a bond to be approved by the banking commissioner in the sum of not more than $1,000. Section 4 confers authority on the banking commissioner to approve the bond and the "financial responsibility," experience, character, and

fitness of the licensee and a standard for the measurement of his fitness. It confers on the commissioner power to approve or deny an applciation for a license including the other powers therein defined. Section 5 limits the right of the licensee to advertise. Section 6 (a) contains this provision:

"Every licensee hereunder may lend any sum of money not exceeding three hundred dollars [$300] in amount and may charge, contract for, and receive thereon interest at a rate not exceeding three and one-half per centum [3½%] per month on any part of the unpaid principal balance of the loan not in excess of one hundred and fifty dollars [$150] and two and one-half per centum [2½%] per month on any remainder of the unpaid principal balance of the loan."

Following the above section, is set forth in detail how interest shall be computed by the licensee on his loan and prohibits splitting or dividing loans. The section sets forth in detail the duties of the licensee to the borrower and requires him to have at all times a net worth of at least $20,000 and its maintenance. It forbids the licensee taking a lien on any real estate except obtained by virtue of a judgment or decree. It declares any "loan in the amount or of the value of three hundred dollars [$300] or less for which there has been charged, contracted for, or received a greater rate of interest, or consideration than licensees are permitted to charge, contract for, or receive under this Act" (section 7 [b]) to be against public policy and forbids the enforcement of a loan made outside of this state in violation of the act. It contains this clause:

"No person, except as authorized by this Act, shall, directly or indirectly, by any device, subterfuge, or pretence whatsoever charge, contract for, or receive, or participate, as agent, broker, or in any other capacity, in charging, contracting for, or receiving, any interest, discount, or consideration greater than six per centum [6%] per annum upon any loan in the amount or of the value of three hundred dollars [$300] or less, and no loan made in violation of the provisions of this Act shall be valid or enforceable within this Commonwealth." Section 7 (a).

"No licensee shall, directly or indirectly,

charge, contract for or receive any interest, or consideration greater than six per centum [6%] per annum upon any loan in the amount or of the value of more than three hundred dollars [$300], or in any case in which the licensee permits any individual as borrower or as indorser, guarantor, or surety for any borrower, or otherwise, to owe directly or contingently, or both, to the licensee at any time the sum of more than three hundred dollars [$300] for principal." Section 8.

The power to enforce the provisions of the act is conferred on the banking commissioner including the duty to make annual examinations, etc., of the business of the licensee.

All moneys collected by the banking commissioner under the provisions of the act for license fees and examinations or otherwise are to be paid into the state treasury, credited to the account of the state banking commissioner. Each licensee is required on or before the 15th day of March each year to file with the banking commissioner a report made under oath giving such information as the commissioner may require relative to the business during the preceding calendar year. It imposes the duty on the banking commissioner to make and publish annually an analysis and recapitulation of the reports. The licensee is imperatively required to keep and use in his business and preserve for at least two years, after making the final entry of his loan, books, accounts, etc., from which it may be determined whether he has complied with the provisions of the act and the rules and regulations of the banking commissioner. It provides for a punishment on conviction of the licensee for a violation of designated sections and subsections of the act. Also, that a "contract of loan not invalid for any other reason, in the making or collection of which any act shall have been done which constitutes a misdemeanor * * * shall be void and the lender have no right to collect or receive any principal, interest or charges whatsoever." Section 11.

Section 12 exempts from its operation corporations doing business under any law of the commonwealth or of the United States, "relating to banks, savings banks, trust companies, trust banking and title insurance companies, building and loan associations, co-operative marketing associations, credit unions, or licensed pawnbrokers, nor to any person, partnership, association or

corporation engaged in the business of purchasing direct from dealers, notes arising from the sale of motor vehicles or of financing or refinancing individuals through the medium of loans upon the sole security of liens upon motor vehicles.''

It repeals so much of section 4224a-1, Kentucky Statutes (1930), as applies to persons licensed under the act. It expressly provides it shall not be construed as repealing or amending sections 2218 or 2219, Kentucky Statutes (1930), and provides these sections shall not apply to loans made under the authority of the act. It declares 'all acts and parts of acts, whether general, special, or local, which relate to the same subject-matter as this act, are repealed. Section 13 regulates the assignment of or order for payment of any salary, wages, commissions, or compensation for services, earned or to be earned, when taken as security for any loan made under the act and, declares the same shall be invalid unless the amount of the loan is paid to the borrower simultaneously with its execution and ''there shall not at any time be collectible from the employer of the borrower more than a sum equal to ten per centum [10%] of the amount then owing the borrower for any such salary,'' etc. Section 14 carries a partial invalidity provision.

The validity of the act is assailed on every conceivable ground and sustained by adroit and ingenious, skillful arguments with the citation of a multitude of authorities. It is declared in the briefs as well as in the oral argument that the title does not meet the requirements of section 51 of our Constitution; it is a special law and violates subdivision 21 of section 59 of our Constitution; and violates equality and confers exclusive privileges and, therefore, violates section 3 of our Bill of Rights; it is class legislation as to rates of interest impossible in view of our Constitution; it contravenes the ''due process of law'' and ''equal protection of the laws'' secured by the provisions of the first section of the Fourteenth Amendment of the Constitution of the United States.

These questions must be solved according to the prevailing and established rules applicable in such cases.

It is within the power of the courts to declare void and ineffective for any purpose all Acts of the General

Assembly in violation of the provisions of the state Constitution or the Constitution of the United States. Stiglitz v. Schardien, 239 Ky. 799, 40 S. W. (2d) 315; Myre v. Lewis, 239 Ky. 788, 40 S. W. (2d) 322. In determining the constitutionality of an act, all doubt regarding its validity must be resolved in its favor (Stevenson et al. v. Hardin et al., 238 Ky. 600, 38 S. W. [2d] 462), presuming always that the Legislature intended to enact a constitutional act (Moore v. State Board of Charities and Corrections, 239 Ky. 729, 40 S. W. [2d] 349), and did not intend to violate any provision of either the State or Federal Constitution. It is a permanent rule that a legislative act must be sustained by the courts unless clearly offending constitutional mandates. And where a statute is susceptible of two constructions, one of which will render it unconstitutional and the other valid, the latter will be adopted and, in case of doubt, the rule is to uphold its constitutionality, if possible. Commonwealth Life Ins. Co. v. City of Paducah, 244 Ky. 759, 52 S. W. (2d) 704; Shaw v. Fox, 246 Ky. 343, 55 S. W. (2d) 11, 14; Ashland Transfer Co. v. State Tax Commission, 247 Ky. 144, 56 S. W. (2d) 691, 87 A. L. R. 534; Commonwealth v. C. & O. Ry. Co., 251 Ky. 382, 65 S. W. (2d) 95.

Within the meaning of our Constitution, " ' "special legislation" is such as relates either to particular persons, places, or things, or to persons, places, or things which, though not particularized, are separated by any method of selection from the whole class to which the law might, but for such legislation, be applied.'

"A 'local law' is one whose operation is confined within territorial limits other than those of the whole state, or any properly constituted class or locality therein. 'Class legislation' is such as concerns and operates upon a portion of a particular class of persons or things, and therefore partakes of a private act. A law is general when it is by its terms, intendment, and phraseology, uniform in its operation, and operates alike and equally on all persons or things, as a class, throughout the state, under the same circumstances. The test in determining whether a law is special or local or general, is, 'Does it embrace all of the class to which it relates?' Whether it is the one or the other is not to be determined by its form, but its substance. * * * The mere fact that its practical effect is special, or

local, does not necessarily bring it within the constitutional provisions against special, or local or class legislation." Shaw v. Fox, 246 Ky. 342, 55 S. W. (2d) 11, 14; Commonwealth v. Thomas' Adm'r, 140 Ky. 789, 131 S. W. 797.

In Sutherland on Statutory Construction (2d Ed.) sec. 203, it is written:

> "Whether or not an act is class legislation, or whether or not it is a general or special law depends fundamentally upon a question of classification. Where an act is assailed as special or class legislation, the attack is necessarily based upon the claim that there are persons or things similarly situated to those embraced and which by the terms of the act are excluded from its operation. The question then is whether the persons or things embraced by the act form by themselves a proper and legitimate class with reference to the purpose of the act. It is agreed on all hands that the constitution does not forbid a reasonable and proper classification of the objects of legislation. The question is, what is reasonable and proper in the premises."

> "Classification is a necessary feature and power of legislation, as it is impossible for any extensive code of laws to apply to every person or subject in the state. City of Louisville v. Commonwealth, etc., 134 Ky. 488, 121 S. W. 411, 413."

Justice Holmes, in his dissenting opinion in Weaver v. Palmer Bros. Co., 270 U. S. 402, 46 S. Ct. 320, 323, 70 L. Ed. 654, aptly and admirably stated the same rule, thus:

> "A classification is not to be pronounced arbitrary because it goes on practical grounds and attacks only those objects that exhibit or foster an evil on a large scale. It is not required to be mathematically precise and to embrace every case that theoretically is capable of doing the same harm. 'If the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.' "

See Jefferson County v. Cole, 204 Ky. 27, 263 S. W. 1114.

With these settled principles as a Rosetta stone, we shall review the grounds upon which the act is challenged.

The identical classification of money lenders, with a minor difference, has been made by legislatvie enactments of other states. They have been declared constitutionally valid by the courts thereof and the Supreme Court of the United States. See People v. Stokes, 281 Ill. 159, 118 N. E. 87; Commonwealth v. Puder, 261 Pa. 129, 104 A. 505; Badger v. State, 154 Ga. 443, 114 S. E. 635; Harbison v. Stamer, 281 Ill. 450, 118 N. E. 94; Koen v. State, 162 Tenn. 573, 39 S. W. (2d) 283, 286; State v. Hill, 168 La. 761, 123 So. 317, 69 A. L. R. 574; Palmore v. B. & O. R. R. Co., 156 Md. 4, 142 A. 495; Sweat v. Commonwealth, 152 Va. 1041, 148 S. E. 774; Cavanaugh v. People, 61 Colo. 292, 157 P. 200; Warner v. People, 71 Colo. 559, 208 P. 459; Beasley v. Cahoon, 109 Fla. 106, 147 So. 288; Morgan v. Lowry, Sheriff, 168 Ga. 723, 149 S. E. 37 (1929), affirmed in Morgan v. State (1930) 281 U. S. 691, 50 S. Ct. 238, 74 L. Ed. 1120; Dunn v. State of Ohio, 122 Ohio St. 431, 172 N. E. 148; Jannett et al. v. Windham, Sheriff, 109 Fla. 129, 147 So. 296, 153 So. 784 (1933). The material difference in the Act of 1934 and those of other states is, it exempts lenders of money, other than those exempted in the acts of other states, by this clause:

"This Act shall not apply * * * to any person, partnership, association or corporation engaged in the business of purchasing direct from dealers, notes arising from the sale of motor vehicles or of financing or refinancing individuals through the medium of loans upon the sole security of liens upon motor vehicles." Section 12.

It is argued in behalf of Ravitz and Lissauer that "whatever may be the rule in other jurisdictions, under our constitution, it is fundamental that the legislature may not make a class—the class must exist. * * * This being true * * * any regulation of the loaning money in sums of three hundred dollars [$300.00] or less must be applicable to every person, firm or corporation engaged in that business, and the attempted exemption of those excepted by section 12 renders the Act invalid. * * * We have no quarrel with section 12 of said Act insofar as it exempts from the operation of the Act, banks, saving banks, trust companies, trust banking and title insurance companies, building and loan associations, co-op-

erative marketing associations, credit unions, or license pawnbrokers, for each of such companies and associations, unions and pawnbrokers are otherwise supervised and regulated by laws of the Commonwealth of Kentucky. But we do urge that the exemption of the civil and criminal penalties of said Act of 'any person, partnership, association, or corporation engaged in the business of purchasing direct from dealers, notes arising from the sale of motor vehicles, or of financing or refinancing individuals through the medium of loans upon security of liens upon motor vehicles,' is an unreasonable and discriminating classification, and renders the Act unconstitutional." This argument is inconsistent with the determinative principles hereinbefore stated, and also omits to observe general knowledge of discriminative facts.

It is a matter of general information that those who engage in business of purchasing direct from dealers, notes arising from the sale of motor vehicles, or of financing or refinancing individuals through the medium of loans upon the sole security of liens upon motor vehicles, confine their business to dealing in one type of securities secured by one kind of property, and thus class themselves. Those who engage exclusively "in the business of purchasing direct from dealers, notes arising from the sale of motor vehicles or of financing or refinancing individuals through the medium of loans upon the sole security of liens upon motor vehicles," having classified themselves by confining their businesses to one thing or subject, when exempting them from the operation of the act, it must be presumed the Legislature had such knowledge of their business and the fact those engaged therein had so classified themselves and was justified in exempting them from the act. The mere fact that banks and other institutions named in section 12 operate under, and are regulated by, the laws of the commonwealth or of the United States, manifestly was not the sole reason that actuated the Legislature to exempt them from the provisions of the act.

This class of lenders is easily distinguishable from that named in the act. The latter have classified and distinguished themselves from all other money lenders, by the investment of a small capital and the employment of an abundance of deceit, chicane, and devices for business purposes.

It is a matter of general knowledge they loan of their capital small sums to helpless and necessitous borrowers on salaries and chattels, and employ nefarious plans to coerce and extort from them their daily, weekly, and monthly earnings, under the guise of charges, fees, and interest for the use of their money. The difference in the methods employed in their business and those of all other classes of money lenders is like unto that between the methods of the professional bandit and those of the bank. Commonwealth v. Donoghue, 250 Ky. 343, 63 S. W. (2d) 3, 89 A. L. R. 819.

It was competent for the legislature to recognize them as a class for the purpose of remedying the evil arising from their practices and for the protection of their destitue borrowers. See Rast v. Van Deman & Lewis Co., 240 U. S. 342, 36 S. Ct. 370, 374, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 78, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160; Chi., Burl. & Q. R. R. Co. v. McGuire, 219 U. S. 549, 31 S. Ct. 259, 55 L. Ed. 328; German Alliance Ins. Co. v. Lewis, 233 U. S. 389, 34 S. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189; Price v. Illinois, 238 U. S. 446, 452, 35 S. Ct. 892, 59 L. Ed. 1400.

The above principles confute the argument that its provisions violate either section 3 of the Bill of Rights or subdivision 21 of section 59 of our Constitution, or the first section of the Fourteenth Amendment of the Constitution of the United States. Postal Tel. Cable Co. v. City of Newport, 247 U. S. 464, 38 S. Ct. 566, 62 L. Ed. 1215; Potter v. Dark Tobacco Growers' Co-op. Ass'n, 201 Ky. 441, 257 S. W. 33; Begley v. Erasmie, 205 Ky. 240, 265 S. W. 833; Begley v. Erasmie, 273 U. S. 655, 47 S. Ct. 342, 343, 71 L. Ed. 825; Jones v. Russell, 224 Ky. 390, 6 S. W. (2d) 460.

The insistence of Ravitz and Lissauer that the act is inhibited by our Constitution is chiefly predicated on our opinions in Simpson v. Ky. Citizens' Bldg. & Loan Ass'n, 101 Ky. 496, 41 S. W. 570, 42 S. W. 834, 19 Ky. Law Rep. 1176; Reddick v. U. S. Bldg. & Loan Ass'n's Assignee, 106 Ky. 110, 49 S. W. 1075, 20 Ky. Law Rep. 1720; Safety Bldg. & Loan Ass'n v. Montjoy, 107 Ky. 475, 54 S. W. 719, 21 Ky. Law Rep. 1189; Cynthiana Bldg. & Sav. Ass'n v. Ecklar, 112 Ky. 166, 65 S. W. 335, 23 Ky. Law Rep. 1467, and numerous others including

Community Hospital v. Barren County Fiscal Court, 244 Ky. 672, 52 S. W. (2d) 896.

True it is, that in the Simpson Case and others following it, it was our conclusion that the classification embraced in the acts therein involved was within the provisions of our Constitution forbidding the enactment of local or special laws or class legislation. It was not held in any one of those cases, nor was it intimated, that subdivision 21 of section 59 of our Constitution forever forbid the Legislature from enacting any law classifying money lenders and providing for the control, regulation, and supervision thereof as a class including the fixing the rate of interest thereunder as a part of the system of regulation.

The act covers fourteen pages in the session laws and provides an extensive, efficient system for the control, regulation, and the general supervision of the class of money lenders embraced in it. The inclusion of a provision fixing and regulating the charging and collecting interest by the money lenders as classified by it is merely a part of the system provided. As was said in People v. Erbaugh, 42 Colo. 480, 94 P. 349, 352:

"That which is appropriate or relevant to the subject of a bill as expressed by its title * * * is a necessary incident to the object of a bill."

As it relates to interest, it is not discriminatory against one class of borrowers and favors another class, since its provisions apply to all persons within the classification therein.

The act is not a general law relating to legal interest as it is defined by section 2218, Kentucky Statutes. Its intendment and purpose is to control, regulate, and supervise the business of the money lenders classified by it, and, in so far as it deals with the subject of interest, it does so incidentally and as a part of the system of regulation and control therein provided.

As its provisions relate to interest, it is not a local or special law, nor class legislation. Cavanaugh v. People, 61 Colo. 292, 157 P. 200; Althaus v. State, 99 Neb. 465, 156 N. W. 1038; Ex parte Alabama Brokerage Co., 208 Ala. 242, 94 So. 87.

It is always competent for the Legislature to direct its enactments against what it deems an evil as it actually exists without covering the whole field of pos-

sible abuses and it may do so none the less that the forbidden act does not differ in kind from those that are allowed. In Rast v. Van Deman & Lewis Co., Justice McKenna, writing for the court, said:

"It is the duty and function of the legislature to discern and correct evils, and by evils we do not mean some definite injury, but obstacles to a greater public welfare. Eubank v. Richmond, 226 U. S. 137, 142, 33 S. Ct. 76, 57 L. Ed. 156, 158, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1914B, 192; Sligh v. Kirkwood, 237 U. S. 52, 59, 35 S. Ct. 501, 59 L. Ed. 835, 837. And, we repeat, 'it may make discriminations if founded on distinctions that we cannot pronounce unreasonable and purely arbitrary.' Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350, 351."

One of the evils the Legislature evidently sought to correct by the act was the charging and collecting a greater rate of interest by the lenders classified therein than that permitted by the act. It is a matter of general knowledge that there are grave abuses in the business of the lenders classified by it; that borrowers are treated with great harshness and often deprived of their property by a process that is little less than robbery. State v. Cary, 126 Wis. 135, 105 N. W. 792, 11 L. R. A. (N. S.) 174; Cavanaugh v. People, supra; Griffith v. State of Connecticut, 218 U. S. 563, 31 S. Ct. 132, 54 L. Ed. 1151; State v. Sherman, supra; Ex parte Alabama Brokerage Co., supra.

The Constitution of the state of Alabama contains a provision similar to ours prohibiting the enactment of local laws regulating the rate of interest. The question here under review was decided in Ex parte Alabama Brokerage Co., supra. The court said:

"It is now also urged with much earnestness that the act is obnoxious to subdivision 13 of section 104, which prohibits local laws 'regulating the rate of interest.' It is clear, however, that the act does not undertake in any way to fix or regulate the rate of interest."

The Constitutions of Arizona, Georgia, Illinois, Indiana, Louisiana, Minnesota, Missouri, New York, Pennsylvania, and West Virginia contain a provision forbidding the enactment of local or special laws relating to the rate of interest on money, similar to subdi-

vision 21 of section 59 of our Constitution, and acts of the Legislatures of those states like that here involved have been declared constitutionally valid by their courts of last resort.

In King et al. v. State, 136 Ga. 709, 71 S. E. 1093, 1097, the court said:

"The law fixing the maximum rate of interest that can be lawfully charged is a general law. It is not a good objection to it that it makes penal the exaction of interest exceeding 5 per cent. per month when there was in existence a general law making the charging of more than 8 per cent. interest per annum usury, and providing forfeitures and civil penalties for a violation of it. The act we are passing on, while it deals with a certain class of usurers, is a general law. As far as concerns this class, it has general operation throughout the state, and has application to no limited territory, and applies to all persons in the state who violate it. The fact that there are certain usurers to whom it does not apply does not make the act a special law. The Legislature had the right to fix the amount of usury the exaction of which would constitute a crime, and to leave in force an existing general law providing that the exaction of a less amount, but more than 8 per cent. per annum, would be usury and subject the offender to certain forfeitures and civil penalties; but not to a criminal prosecution. Ex parte Berger, 193 Mo. 16, 90 S. W. 759, 5 L. R. A. (N. S.) 530, 534, 112 Am. St. Rep. 472 [5 Ann. Cas. 383]; State v. Sherman, 18 Wyo. 169, 105 P. 299, 27 L. R. A. (N. S.) 898, 908 [Ann. Cas. 1912C, 819]."

Sustaining this statement, see People v. Stokes, supra; International Text-Book Co. v. Weissinger et al., 160 Ind. 349, 65 N. E. 521, 65 L. R. A. 599, 98 Am. St. Rep. 334; State v. Hill, 168 La. 761, 123 So. 317, 69 A. L. R. 574; Wheeler v. Remedial Loan Co., etc., 261 Pa. 139, 104 A. 508; Com. v. Puder, 261 Pa. 129, 104 A. 505.

The difference in the rates of interest accorded licensees under the present act and other money lenders who are not of the class embraced by it, whether doing business under and regulated by the laws of the commonwealth or the United States or not, in no way affects

its constitutional validity. For it is uniform in its operation and operates alike and equally on all persons as a class throughout the state under the same circumstances. Assaria State Bank v. Dolley, 219 U. S 121, 31 S. Ct. 189, 55 L. Ed. 123; Engel v. O'Malley, 219 U. S. 128, 31 S. Ct. 190, 55 L. Ed. 128; W. W. Cargill Co. v. Minn., 180 U. S. 453, 21 S. Ct. 423, 45 L. Ed. 619; Hawkins v. Bleakly, 243 U. S. 210, 37 S. Ct. 255, 61 L. Ed. 678, Ann. Cas. 1917D, 637; Jeffrey Mfg. Co. v. Blagg, 235 U. S. 571, 35 S. Ct. 167, 59 L. Ed. 364; People v. Stokes, supra; Commonwealth v. Puder, supra; Badger v. State, supra; State v. Wickenhoefer, 6 Pennewill (Del.) 120, 64 A. 273; Warner v. People, 71 Colo. 559, 208 P. 459; Wessell v. Timberlake, 95 Ohio St. 21, 116 N. E. 43, Ann. Cas., 1918B, 402.

The provisions of the act requiring persons commencing business thereunder to be worth not less than the amount designated in the act and conferring the power of control and supervision upon the banking commissioner are not within an inhibition of any section of our Constitution. It delegates to him neither legislative, judicial, nor arbitrary power. State Racing Com. v. Latonia Agricultural Ass'n, 136 Ky. 173, 123 S. W. 681, 25 L. R. A. (N. S.) 905; Ashland Transfer Co. v. State Tax Com., 247 Ky. 144, 56 S. W. (2d) 691, 87 A. L. R. 534; Rawles v. Jenkins, et al., 212 Ky. 287, 279 S. W. 350; Hall v. Geiger-Jones Co., 242 U. S. 539, 37 S. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643. Nor does it offend our Constitution by requiring a licensee to maintain a net worth of $20,000. This requirement is a part of a coherent system provided for the control, regulation, and supervision of the class embraced by it. This provision does not render the act discriminatory. The Legislature deemed such requirement essential and necessary to effectuate the purpose of the act. We are forbidden to inquire into the wisdom of its inclusion. The requiring the payment by a licensee of a license tax is an incident to, and in the discretion of the Legislature was deemed proper as the part of the system of regulation as it is contained in the act. Therefore, though the act originated in the Senate, the requirement of the licensee to pay a license tax, being merely an incident to the purpose of the act, does not make it a revenue measure. Lang v. Com., 190 Ky. 29, 226 S. W. 379; Livingston County v. Dunn, 244 Ky. 460, 51 S. W. (2d) 450;

Cooley's Constitutional Limitations (8th Ed.) pp. 267, 268; Twin City National Bank v. Nebecker, 167 U. S. 196, 17 S. Ct. 766, 42 L. Ed. 134; Millard v. Roberts, 202 U. S. 429, 26 S. Ct. 674, 50 L. Ed. 1090.

Numerous other questions are argued in briefs, but our views herein may be regarded as a sufficient response thereto.

Wherefore, the judgment in each case is affirmed.

The whole court sitting.