## Schultz et al. v. Provident Loan Ass'n, Inc.

Nov. 28, 1941.

James S. Carroll for appellants.
Taylor Smith for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

This appeal involves the construction of Sections 883i-14 and 883i-15, Kentucky Statutes, which are a part of the Small Loan Law enacted by the General Assembly at its 1934 session and may be found in Chapter 17, page 32 of the Acts of that year.

Section 883i-14 provides that the loan shall not exceed $300, and the interest rate shall not be in excess of 3½% per month on any part of the unpaid principal balance of the loan not in excess of $150, and 2½% per month on any remainder of the unpaid balance of the loan. In addition to this interest no further or other charge or amount whatsoever for any examination, service, brokerage, commission, expense, fee, or bonus or other thing, shall be directly or indirectly charged, contracted for or received, except lawful recording fees actually and necessarily paid by the lender to public officials for filing or recording in any public office any instrument securing the loan. It contains an inhibition against splitting or dividing loans, and forbids any one borrower or any husband or wife, individually or together, from becoming indebted under more than one loan contract of $300 or less. Obviously, this latter provision is for the purpose of preventing the maximum interest rate from applying on loans of more than $300 by having such loans split, and from preventing the maximum rate of 3½% per month from applying to other than the first $150 of the loan.

Section 883i-15 reads:

"If any interest, consideration, or amount in excess of the interest authorized by this Section is charged, contracted for, or received by any licensee under any contract of loan or loan transaction, such contract or transaction shall be void and the licensee shall have no right to collect or receive any principal, interest, or charges whatsoever."

On Oct. 2, 1937, appellants, Otto Schultz and his wife, Hertha, borrowed $300 from the appellee, Provident Loan Association, of Lexington, and agreed to pay same at the rate of $15 per month on the principal together with 3½% interest per month on any unpaid principal balance not in excess of $150 and 2½% interest per month on any remainder of the loan. The loan was evi-

denced by a non-negotiable note secured by a chattel mortgage upon certain household goods and an automobile belonging to the debtors. Schultz used the car in his business and when it broke down in Paris, Kentucky, and he was informed by a garage man in that city that it would cost more to repair the car than it was worth, he put the car in on a trade for another used car.

Thereafter Schultz became in arrears on the payments due appellee, and its manager, A. I. Gillespie, who was a justice of the peace in Fayette County, telephoned Schultz's then attorney, Mr. Rice, that if Schultz did not pay his debt to appellee, he would institute criminal proceedings against him for disposing of mortgaged property. Rice testified he explained the car transaction to Gillespie and informed him that Schultz was willing to execute a mortgage to appellee on the car for which he had traded; that Gillespie refused his proposition and insisted upon Schultz paying the loan, otherwise he would prosecute him criminally. Gillespie gives a somewhat different version as to what was said in the conversation between Rice and him. Regardless of which of them was correct, a warrant was issued against Schultz from Gillespie's court on Oct. 5, 1938. After Rice interceded for Schultz, Gillespie agreed that if Schultz would pay the cost incurred in the criminal proceedings and pay the fee of $28.80 due appellee's attorney, McGuire (in whose hands the note had been placed for collection and who handled appellee's business for a fee of 10%), and pay appellee $5 per week, the criminal prosecution would be dismissed. Schultz agreed to do this. He paid McGuire's fee in three installments, and made three payments on appellee's debt, which with the attorney fee aggregated $55.06.

This action was filed by appellee to recover from appellants $283.79 balance due on the note and to foreclose the mortgage lien securing same. The second paragraph of the answer was a counterclaim wherein appellants pleaded that the $28.80 paid appellee's attorney was made under duress and was a prerequisite required by appellee before it would accept further payments on its loan; that this was in violation of Sections 883i-14 and 883i-15; that by virtue of appellee's violating these sec tions of the statute, appellants are absolved from the payment of the loan and are entitled to recover all payments made thereon as are set out in the pleading. It

is alleged that there is a controversy between the parties as to the meaning of Sections 883i-14 and 883i-15 of the Statutes and we are asked to construe them. A reply completed the issue.

In a written opinion the chancellor held that the loan contract in its inception being free from usury was unaffected by the appellee in exacting usury from appellants in causing them to pay the attorney's fee. But he further held that under the Small Loan Law appellants could not have been required to pay this attorney's fee as a prerequisite of appellee's accepting further payments on the loan, and he adjudged this sum should be credited on appellants' debt.

The general rule is thus stated in 27 R. C. L., Section 51, page 248:

"The principle finds general acceptance and frequent enunciation that, since the usurious character of a transaction must be determined as of the date of its inception, a contract free from usury in its inception will not be invalidated by any subsequent usurious transactions on it. * * * And a contract for a consideration exceeding legal interest to forbear enforcing payment of an obligation, which is not in itself tainted with usury, will not operate to taint the obligation with usury, and the money paid for forbearance will be applied in payment of the obligation."

This text finds support in Cain v. Bonner, 108 Tex. 399, 194 S. W. 1098, 3 A. L. R. 874; Stinson v. Bisbee, 55 Idaho 38, 37 P. (2d) 236, 102 A. L. R. 570, and the annotations which follow these two cases.

But immediately following the text above quoted from 27 R. C. L. appears this:

"Of course, the law is otherwise in respect to incurring the penalty or forfeiture for a violation of the law against usury. In that case, the subsequent receipt of usurious interest by the lender, on a contract originally untainted with usury, renders him liable to the penalty or forfeiture incurred."

This last quotation appears to be taken from the case of Lindsay v. Hill, 66 Me. 212, 22 Am. Rep. 564, and it strikes us as controlling on the question at hand.

The chancellor in his opinion, and appellee in its brief, places considerable reliance in Pyke's Adm'r v. Clark, 3 B. Mon. 262, 42 Ky. 262. They construe it as holding that a usurious consideration collected for the granting of an extension of time to the maker of a note does not vitiate the original note which in its inception was untainted by usury because the court directed that the usurious interest so collected be applied on the debtor's note. Both the chancellor and appellee's counsel misconstrue this opinion. A reading thereof discloses it fails to mention whether or not the usurious interest collected from the debtor in consideration of granting him an extension of the note affected the original note. The transactions involved in the Pyke opinion occurred in 1833 and 1834, and the statute in force at that time was an Act of 1819 prescribing no forfeiture because of usury, but merely providing that a rate in excess of 6% could not be collected. 2 Digest Statute Laws, Ky. (Morehead & Brown, 1834) page 856. The 1819 Act is practically the same as Sections 2218 and 2219 of our present usury statutes.

A case which seems to be in point is Alves v. Henderson Nat. Bank, 89 Ky. 126, 9 S. W. 504, 507. There the notes were silent as to interest and it was deducted in advance from the face of the loan. After maturity the borrower secured the notes by a mortgage which provided for 8% interest on the notes after maturity. Section 30 of the National Currency Act of Congress of June 3, 1864, 12 U. S. C. A., Section 85, prescribed that in the event a national bank charged a greater rate of interest than was allowed by the law of the state wherein the bank was located, the entire interest charged should be forfeited. In meeting the argument that only the interest which was due after maturity was forfeited, the court said:

"But under the said act of congress it is not necessary, in order to effect a forfeiture of the entire interest, that the agreement to pay usury should appear in the note, or that the agreement should be made simultaneously with the agreement to lend the money. Were the law so construed, the effect would be to enable the bank to evade the law every day by reducing the usurious contract to writing on a separate piece of paper, or by making it after the contract to loan the money was entered into."

We have examined the foreign authorities cited by appellee and without listing or discussing them, it will suffice to say they have no application here. Those cases illustrate that the Small Loan Statutes so vary in the several states that a case thereon from one jurisdiction is seldom of great assistance in another in determining what practices are condemned as usurious and whether or not they work a forfeiture of the contract. In examining the foreign authorities cited by appellant it would appear that Columbus Postal Employees Credit Union v. Mitchell, 62 Ohio App. 343, 23 N. E. (2d) 989; Consolidated Plan of New Jersey v. Shanholtz, 147 A. 401, 7 N. J. Misc. 876; Wells v. Indianapolis Co., 88 Ind. App. 231, 161 N. E. 687; Family Loan Co. of Nashville v. Hickerson, 168 Tenn. 36, 73 S. W. (2d) 694, 94 A. L. R. 664; Com. v. Pennsylvania Loan Corp., 127 Pa. Super. 253, 193 A. 141, are in point, but a close reading of them shows that in each instance the original contract contained a provision in violation of the statute. Therefore, they are of little assistance in the case at bar where the original contract was in complete accord with the Small Loan Statute and where the question before the court is the effect of a subsequent usurious transaction.

This court has held that an attorney's fee paid in addition to legal interest in consideration for forbearance is usurious. Fidelity Trust & Safety Vault Co. v. Ryan, 109 Ky. 240, 58 S. W. 610. The Small Loan Act, Ky. Stats., Sections 833i-1 to 833i-32, was declared constitutional in Ravitz v. Steurele, 257 Ky. 108, 77 S. W. (2d) 360. Sections 833i-14 and 883i-15 state that the borrower in addition to the interest therein prescribed shall not be liable for any further charges of any nature except the lawful filing or recording fees if necessary and actually paid; and in the event any sum is exacted by the lender under any contract of loan or loan transaction in excess of the interest provided in the Act, the lender shall have no right to collect or receive any principal or interest. Courts will not tolerate the collection of usury through the use of any trick, device or subterfuge, 66 C. J., Sections 76, 183; Williams v. Eagle Bank, 172 Ky. 541, 189 S. W. 883. See annotations 105 A. L. R. 795.

In the instant case there was no connection between the criminal charge preferred against Schultz and the fee of $28.80 paid appellee's attorney. It is practically admitted this fee was due McGuire since the appellee had

put the claim in his hand for collection on a 10% basis. From a full and interesting history of usury given in Com. v. Donoghue, 250 Ky. 343, 63 S. W. (2d) 3, 89 A. L. R. 819, it is seen that from Biblical times men have been struggling to protect themselves from the payment of usurious interest. In Com. v. Continental Co., 275 Ky. 238, 121 S. W. (2d) 49, in quoting from Hurt v. Crystal Ice & Cold Storage Co., 215 Ky. 739, 286 S. W. 1055, it was in effect written that if there is in substance a receipt of usurious interest, the parties are subject to the statutory consequences no matter what device they may have employed to conceal the true character of their dealings.

The Small Loan Act allows the lender to charge interest as high as 42% yearly, but it provides that he must not exact anything more in any form from his debtor, and to curb his cupidity Section 883i-15 says that should he exact more of his debtor, then he has no right to receive any principal or interest. Under the Hurt case, supra, the appellee must suffer the consequences of this statute and can collect neither interest nor principal from appellants, and it must repay them the $55.06 collected from appellants after it forced them to pay the usurious attorney's fee on Jan. 10, 1939, with interest from the dates the various amounts were paid. The original transaction was untainted by usury and the $99.19 appellant paid thereon cannot be recovered.

The judgment is reversed with directions to enter one in conformity with this opinion.

The Whole Court sitting.