HOUSEHOLD FINANCE CORPORATION, a Corporation, Relator, v. HARRY SHAFFNER, Commissioner of Finance of the State of Missouri.—No. 40290.—203 S. W. (2d) 734.

Court en Banc, July 14, 1947.

*E. R. Morrison, W. H. Hoffstot* and *Hubachek & Kelly* for relator; *Morrison, Nugent, Berger, Hecker & Buck* of counsel.

810

*J. E. Taylor,* Attorney General, *Arthur M. O'Keefe* and *George W. Crowley,* Assistant Attorneys General, for respondent.

CLARK, J.—Original mandamus in this court to compel respondent, Commissioner of Finance, to issue to relator a license to do business under our Small Loan Law, Sections 8150, 8171, inclusive, Revised Statutes of Missouri 1939. [Mo. R. S. A.]

The facts as stated by relator and conceded by respondent entitle relator to the requested license unless the Small Loan Law has been nullified by Section 44, Article 3, Missouri Constitution of 1945. [All references hereafter to Section 44 will be to this constitutional provision and references to other section numbers will be to sections of Revised Statutes Missouri 1939, and to Mo. R. S. A.]

The Small Loan Law provides: Section 8150, "That no person, copartnership, or corporation shall engage in the business of making loans of money, credit, goods or things in action in the amount or to the value of three hundred dollars ($300.00) or less, and charge, contract for or receive a greater rate of interest than eight (8) per centum per annum therefor, except as authorized by this article and without first obtaining a license from the commissioner of finance . . . ." Other sections provide for the issuance of licenses, inspection and regulation, and permit licensees to charge and collect interest at the rate of three per cent per month on loans up to $100.00

and at the rate of two and one-half per cent per month on loans above $100.00 and not more than $300.00. Section 8171 says: "This article shall not apply to any person, co-partnership or corporation doing business under any law of this state or of the United States relating to banks, trust companies, building and loan associations, or companies operating under the loan and investment companies act, or licensed pawnbrokers." When enacted in 1927 the act contained a section stating that if any section, subsection, clause or phrase be declared unconstitutional, the remainder of the act shall not be affected, and declaring that the act would have been passed even though any part thereof should be declared invalid.

Section 44 of Article 3 of the Missouri Constitution of 1945 is as follows:

"No law shall be valid fixing rates of interest or return for the loan or use of money, or the service or other charges made or imposed in connection therewith, for any particular group or class engaged in lending money. The rates of interest fixed by law shall be applicable generally and to all lenders without regard to the type or classification of their business."

Relator contends: (1) that Section 44, if valid, nullifies Section 8171, only, and leaves the remainder of the Small Loan Law in full force, thus permitting banks and other institutions to operate under that law; (2) that Section 44 is invalid as violating the Fourteenth Amendment to the Constitution of the United States.

Respondent contends that Section 44 nullifies the entire Small Loan Law.

 Orderly procedure seems to require us to first consider relator's second contention, for if it is sustained this case is ended. Relator cites cases to show that a provision in a state constitution is void if it conflicts with the Federal Constitution. We agree. Cases are cited to show that, for purposes of legislation, classification must be reasonable and not arbitrary and that statutes based upon unreasonable or arbitrary classification are void. Again we agree. But relator, in the first part of his argument on the contention now being considered, does not claim that Section 44 provides a classification of money lenders. Relator claims that Section 44 puts all money lenders into one class so far as interest rates are concerned and prevents the general assembly from subdividing them into more than one class. Relator's original brief at page 22 says: "In other words, that there shall be no classification of money lenders." No case has been cited holding that such a provision in a state constitution violates the Federal constitution. Relator's argument also is that the Small Loan Law, with Section 8171 deleted, does not divide money lenders into classes, but merely classifies the types of loans which all lenders may make. This argument seems inconsistent with relator's further argument that Section 44 *does* make an unreasonable classification of

lenders in that it excludes other creditors and "arbitrarily singles out lenders from the entire field of creditors and discriminates against them by denial of the right of classification in the fixing of interest rates." On this point relator cites many cases in which *statutes* or *city ordinances* have been held unconstitutional for arbitrary classification or unreasonable discrimination. Those cases are not in point here. First, because it is not at all certain that Section 44 must be given the narrow construction suggested by relator. At least there is some reason to construe it to apply to interest rates charged by all creditors and not merely to interest rates charged by those who may be strictly defined as "money" lenders. But whether or not Section 44 *requires* the general assembly to fix the same interest rates for other creditors as for money lenders, it certainly does not *prevent* the general assembly from doing so.

No case has been cited and no argument made to convince us that relator has a constitutional right to be classified in a different manner from other types of money lenders. "Because there is room for classification it does not follow that legislation without classification is unconstitutional." [Borgnis v. Falk Co. (Wis.), 133 N. W. 209.]

. The following cases are persuasive if not precisely in point. They do not pass upon the validity of a state constitutional provision, but they do hold that statutes which classify lenders do not conflict with the Fourteenth Amendment of the Federal Constitution: Ex parte Berger, 193 Mo. 16, 90 S. W. 759; Home Discount Co., 147 Fed. 538; Eaker v. Bryant, 24 Cal. App. 87, 140 Pac. 310; Badger v. State, 154 Ga. 443, 114 S. E. 635; People v. Stokes, 281 Ill. 159, 118 N. E. 87; Ravitz v. Steurele, 257 Ky. 108, 77 S. W. (2d) 360; State v. Davis, 157 N. C. 648, 73 S. E. 130.

█ This brings us to the question of whether Section 44 invalidates the entire Small Loan Law, as respondent contends, or invalidates only Section 8171, as relator contends.

Both parties agree that Section 8171 cannot stand against Section 44 and, of course, that is true. Section 44 makes the same interest rates available to all types of money lenders while Section 8171 purports to deny certain rates to banks and other institutions.

Both parties have cited many authorities on rules for determining the validity of the remainder of a statute when some part of the statute has been rendered invalid by a later constitutional provision.

The rule stated by Cooley in his Constitutional Limitations, 7th Edition, page 247, is sufficient for our present purpose. "If, when the unconstitutional portion is █ stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained."

It is necessary for us to determine the true meaning of Section 44 and of the Small Loan Law and to decide whether the latter, without Section 8171, conflicts with the former. This is a difficult problem for we have found no similar provision in the constitution of any other state and, except for general rules of construction, we get no help from the decided cases.

We restate the pertinent portions of Section 44, supplying our own emphasis, as follows:

"No law shall be valid fixing rates of interest for the loan or use of money, . . . for any particular *group* or *class* engaged in lending money. The rates of interest fixed by law shall be applicable generally and to *all lenders* without regard to the *type* or *classification of their business.*"

The Small Loan Law permits any "person, co-partnership or corporation," by procuring a license and submitting to certain regulations, to engage in the business of making loans of $300 or less and charge therefor a greater rate of interest than the contract rate of 8 per cent per annum allowed by our general statute. Section 8165 "No loan greater than $300.00 shall be made by any licensee under this article, nor shall any one person owe any licensee, upon a loan or loans made under authority of this article an aggregate amount of more than $300.00 as principal at any one time."

Laws similar to our Small Loan Law, fixing interest rates according to size of loan, have been enacted in nearly every state and they have been universally held to be constitutional. An exhaustive list of decisions on this subject is contained in Kelleher v. Minshull, 11 Wash. (2d) 380, 119 Pac. (2d) 302. But no case that we can find has considered a constitutional provision similar to our Section 44.

Both parties have cited statements of members of the Constitutional Convention made in the debates on Section 44. These statements show a diversity of views of the individual members as to the meaning of the section. It was offered from the floor and substituted for a section, reported by a committee, which would have fixed definite interest rates above eight per cent for small loans. An amendment was offered and defeated which would have authorized the general assembly to "classify loans as to the amounts and may fix different rates of interest for each such class." Respondent argues that the defeat of this amendment shows that the members believed that Section 44 does not authorize such classification. The argument has some force, but the debates seem to indicate that some of the members believed that the general assembly, without the amendment, would have power to classify loans as to amounts.

However, while it is proper to consider the debates, "the question in interpreting a constitution is not so much how it was understood by its framers as how it was understood by the people adopting it, since the constitution derives its force as a fundamental law, not from

the action of the convention, but from the people who have ratified and adopted it . . . '' [11 Am. Jur., p. 707.] The only way we can determine what meaning was conveyed to the voters by the provision is to determine what it means to us, giving the words used their ordinary and usual meaning. It is not, and cannot be, denied that Section 44 prevents the fixing of interest rates for any particular group or class.

■ Does the Small Loan Law, with Section 8171 omitted, classify *lenders* and fix interest rates for a particular group or class; or does it merely classify *loans* according to amount and make the stated interest rates available to all lenders and, if so, is this permissible under Section 44?

Most of the decisions which consider laws similar to our Small Loan Law speak of the licensees as a "class" of lenders. [Ex parte Fuller, 15 Cal. (2d) 425, 102 Pac. (2d) 321, 327; Commonwealth v. Puder, 261 Pa. 129, 104 Atl. 505; State v. Sherman, 18 Wyo. 169, 105 Pac. 299; Ravitz v. Steurele, 257 Ky. 108, 77 S. W. (2d) 360; Koen v. State, 162 Tenn. 573, 39 S. W. (2d) 283, 285.] "Those ■ engaged in the small loan business constitute a distinctive class of money lenders, and their practices invited public attention, subjecting them to regulation as a distinctive class. . . . '' [Althaus v. State, 99 Neb. 465, 156 N. W. 1038.] ". . . The law assailed regulates the interest chargeable by two classes—unlicensed lenders of money . . . , and licensed lenders . . . '' [40 Am. Jur., p. 700.] "The business of small money lenders is as distinct in many respects from other classes of business as is that of a pawnbroker." True, those cases do not *decide* that lenders are classified by Small Loan Laws. They *assume* that such classification is made and are concerned with whether or not the classification is reasonable. In the instant case the question is not as to a reasonable or unreasonable classification, for Section 44 prohibits *any* favored classification of lenders. If judges ordinarily think and speak of Small Loan Laws as creating or recognizing a special class or group of licensed lenders, would not the average voter likely believe that Section 44 was designed to prevent laws permitting such a class or group from charging a higher rate of interest than the rate allowed to others?

Relator says that the Small Loan Law, with Section 8171 omitted, makes the higher rates of interest available to all lenders and does not confine such rates to a special class. But by the express terms of the Small Loan Law no lender can charge the higher rates without taking out the license and submitting to the regulations provided in the Law. All corporate lenders, [banks, insurance companies, savings and loan associations, etc.] are licensed and regulated under other laws. Whether the laws governing some of them would permit the taking out of additional licenses under the Small Loan Law is at least doubtful.

The Small Loan Law licenses lenders to engage in the "business" of making loans of $300 or less and provides that greater loans cannot be made under the license. Any individual, and any corporation whose statutory charter so authorizes, may make loans in any amount without a license, but under the Small Loan Law only those who procure the license, submit to the regulations and engage in the business of making loans of $300 or less may charge the higher rates. To be able to charge such rates the lender, either individual or corporate, would have to pay an annual fee of $150, give bond in the sum of $1,000, or $2,000 if required, maintain his business in only one location, make detailed reports, submit his records to investigation and audit at least annually and oftener if required. Undoubtedly the law purports to set up for a favored group or class of licensed lenders higher rates than are available to lenders who cannot or do not procure a license and engage in the small loan business, and this is in conflict with Section 44.

Section 44 does not prohibit the enactment of laws authorizing the formation and regulation of different types of lenders, such as banks, savings and loan associations, etc. Nor does it prohibit the enactment of laws providing reasonable classification of loans as to amounts, or otherwise, with different permissible rates of interest for different types of loans, but the rates provided for any type of loans must be available to all lenders who make such loans, without regard to the type or classification of their business. Whether the constitutional provision is wise or unwise is not our province to decide.

For the reasons stated, our alternative writ of mandamus is hereby quashed. *Douglas* and *Leedy, JJ.,* concur; *Conkling, J.,* concurs, and concurs in separate opinion of *Hyde, J.; Hyde, J.,* concurs in separate opinion; *Ellison, J.,* and *Tipton, C. J.,* concur in opinion of *Hyde, J.*

HYDE, J.— I concur in the opinion of Clark, J., herein that the Small Loan Act (Sections 8150-8171) violates Section 44 of Article III of the Constitution because it provides for licensing persons to engage in the business of loaning money up to $300.00 at a greater rate of interest than 8% and prohibits all others from loaning any amount at more than 8%. By thus authorizing such persons to charge more than 8%, "rates of interest" are fixed for a "particular group or class engaged in lending money", which is prohibited by the first sentence of Section 44. Lenders cannot be classified and licensed on the basis of the rates they charge. However, I think it should be made clear that Section 44 does not prohibit all licensing or regulation of those who engage in the business of making loans.

The Attorney General contends that the Constitutional Convention "intended to do away with all classifications of lenders and, therefore,

818

prevent any classification of interest rates, size or types of loans and also to prevent the classification of borrowers." This is a matter of great importance to the people of this state at this time. Recent legislative history and the debates of the Convention show that the principal purpose of enacting Section 44 was to prevent any qualified person or corporation from being barred from the high rate small loan field and thus to allow competition to keep down interest rates therein. Many people thought small loan rates were too high, the field too restricted and some of the business practices oppressive; but regulation had long been considered necessary to protect borrowers from imposition and fraud. Surely Section 44 cannot reasonably be construed as completely wiping out the police power of the state in this field by prohibiting the legislature from undertaking any regulation of the business of lending money. This would make the cure far worse than the condition sought to be relieved.

In construing Section 44, some consideration must be given to the rest of the Constitution and to general principles of constitutional law. Section 3, Article I states that the police power of the state remains exclusively in the people; and Section 3, Article XI provides that "the exercise of the police power of the state shall never be surrendered." It is a familiar principle that "the state constitution is not a grant of power, but only a limitation, as far as the legislature is concerned"; and, therefore, except for the limitations imposed thereby "the power of a state legislature is unlimited and practically absolute." [11 Am. Jur. 894, Sec. 193.]

Therefore, in determining the meaning and effect of Section 44, it will be helpful to take into consideration what it does not prohibit as well as what it does. It does not say that no rates of interest shall be fixed for different classes, kinds or sizes of loans. It does not say that rates fixed shall be applicable to all borrowers without regard to the type or classification of loans made to them. It does not say that no law shall be valid regulating the business of making loans. And it does not say that no law shall be valid requiring a license to engage in the business of making loans. All it prohibits is a law *"fixing rates of interest* . . . (and other charges in connection with the use of money) . . . *for any particular group or class engaged in lending money."* To make this prohibition clear, it also affirmatively states that "rates of interest fixed by law shall be applicable generally and *to all lenders* without regard to the type or classification of their business." Thus Section 44 does not prohibit the Legislature from requiring a license to engage in the business of making loans or particular classes of loans or from regulating such business, if all persons, licensed or unlicensed, including those who occasionally loan their own money as their own investments, may charge the same interest rate for the same loans. (For regulatory legislation exempting from licensing those dealing with their own property, or only occasionally

buying or selling, see Missouri Real Estate Commission Act, Laws 1941, p. 424; Laws 1945, p. 1421.) Certainly the Legislature, in enacting any regulatory legislation, could reasonably define the term "engaged in lending money," which undoubtedly means doing so as a business (the word "engaged" means "occupied" or "employed", Webster's New International Dictionary, 2d Ed.), just as it defined the occupation of real-estate broker in the Real Estate Commission Act.

In other words, Section 44 does not abrogate the police power of the state to regulate and license the business of lending money. It only restricts regulation to the extent that it prohibits fixing different interest rates to be charged by different classes of lenders. No class of lenders may now be given a monopoly or special privileges as to interest rates; but all the rest of the field is as open to the Legislature as it was before. It may fix different maximum rates for different classes, kinds and sizes of loans but all lenders may charge the rate fixed for such loans. It may provide any other reasonable limitations and regulations on loans and lenders. It may classify the lenders to which any limitations or regulations (other than interest rates) shall apply. It may require licenses for all engaging in the business of lending money or for those making certain classes, kinds or sizes of loans, so long as it does not make the classification depend upon the interest rate charged. If the Legislature deems any such regulation and licensing necessary for the protection of the public welfare, Section 44 should not be construed to prevent it.

*Conkling* and *Ellison, JJ.,* and *Tipton, C. J.,* concur.